1

**LAW OFFICES OF NATASHA ROIT**
BY: NATASHA ROIT, SBN 125216

2

3929 MALIBU VISTA DRIVE
MALIBU, CALIFORNIA 90265

3

TELEPHONE:   (310) 657 7871
FACSIMILE:     (310) 657 3026

4

natasharoit@yahoo.com

5

Attorneys for Plaintiff, Rebecca A. Rickley

6

7

8

**UNITED STATES DISTRICT COURT OF CALIFORNIA**

9

**LOS ANGELES DIVISION**

10

11

12

REBECCA A. RICKLEY,

         Plantiff,

13

14

     vs.

15

16

COUNTY OF LOS ANGELES,

        Defendant.

17

)
)
)
)
)
)
)
)
)
)
)
)

Case No.:

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS**

**DEMAND FOR JURY TRIAL**

18

19

20

21

22

23

24

25

26

27

28

1

**JURISDICTION**

1.  This is an action through 42 U.S.C. § 1983 against the County of Los Angeles.

2.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

3.  Plaintiff seeks injunctive relief and/or damages and/or just compensation under the Fifth Amendment to the United States Constitution and damages under the Due Process Clause.  Plaintiff also includes herein related state law claims of which this Court has pendent jurisdiction.

4.  Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

5. This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the *Federal Rules of Civil Procedure*, and 28 U.S.C. §§ 2201 and 2202.

**PARTIES**

6.  Plaintiff, Rebecca A. Rickley (along with Natasha Roit) is a fee simple owner of a property commonly known as 3929 Malibu Vista Drive.  The property consists of two legal lots: the upper lot on which the house is sited, Assessor's I.D. Number 4443-003-012 (hereinafter "Lot 12"), and the lower lot, Assessor's I.D. Number 4443-003-011 (hereinafter "Lot 11").  Both lots, where appropriate, will be referred to hereinafter as "Plaintiff's property" and, where appropriate, separately as Lot 12 and Lot 11.  Each legal lot is taxed separately.

7.  Plaintiff's property is located in an unincorporated area of Los Angeles County and is under the jurisdiction of the County of Los Angeles, including its Department of Regional Planning and Department of Public Works.

8.  Defendant, the County of Los Angeles ("the County"), by way of its agreement with the California Coastal Commission, and as described in more

2

**COMPLAINT FOR DAMAGES FOR
VIOLATION OF FEDERAL CIVIL
RIGHTS (42 U.S.C. § 1983) AND
PENDENT STATE LAW CLAIMS**

detail below, took over the regulatory authority under the *California Coastal Act* from the California Coastal Commission under the Land Use Plan ("LUP") with implementation under the provisions of the Santa Monica Mountains Local Implementation Plan ("LIP").

**PRELIMINARY ALLEGATIONS**

9.  Plaintiff has owned and resided on Plaintiff's property for 19 ½ years.

10.  Plaintiff's property is the adjoining property to 18460 Coastline Drive, Malibu, California owned by Jun Ho Yang and Ho Soon Hwang Yang, previously owned by Shahriar and Kathy Yazdani (hereinafter "the Yang/Yazdani property"). Both properties are sited on a hill over Pacific Coast Highway ("PCH").  The hillside was previously well known for its landslide issues and has been the subject of expensive, multi-million dollar repair by the federal government and the State of California to protect the traveling public on PCH and Topanga Canyon Boulevard, including construction of a multi-tiered waler wall (retaining wall tied into bedrock with steel drilled into the hillside) and the hydraugers (underground drains), which are easily observable when driving on PCH.  Ultimately, the project performed by the federal and state governments had a superior stabilizing effect on the hillside which now enjoys a factor of safety greater than any other similarly located hillside.

11.  The Yang/Yazdani property has been subject to multiple significant illegal projects without permits, including grading, discarding "unnecessary" dirt over the cliff face, uncompacted uncertified fill, no drainage, illegal backyard pad extension, illegal retaining structures, illegal additions and other illegal activities.

12.  In or about January 2016, Plaintiff began noticing signs of movement in her house and on Lot 12, and commissioned an updated topographic comparison to be performed.  (Prior topographic comparisons had confirmed movement on the Yang/Yazdani property).  That comparison, dated February 8, 2016, found that movement has migrated from the Yang/Yazdani property onto

**COMPLAINT FOR DAMAGES FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS**

Lot 12.  Geotechnical evaluation performed thereafter additionally found this migrated movement/creep.

13.  Within days of learning that her property was experiencing movement, Plaintiff applied to the County for permits to install a 23 pile retaining wall (later increased to 24 piles) ("remedial project").

14.  In applying for permits and/or exemptions for the remedial project, Plaintiff was advised by the County as follows, but without limitation:

(a) That Plaintiff's property has been designated by the County within the "H1 zone" and, additionally, within 200 feet of the "H1 zone" (hereinafter "the H1 designation"), without any substantial biological review or any substantiation by the County; and

(b) That Plaintiff's property is within the "Coastal Bluff" zone, that Lot 12 is within 50 feet of the Coastal Bluff, and that Lot 11 is all but consumed by the Coastal Bluff (hereinafter "the Coastal Bluff designations").

15.  The designations referenced in (a) and (b) hereinabove shall, where appropriate, be jointly referred to as "the designations".  The designations constitute final decisions by the County applying land-use regulations to Plaintiff's property.  An actual controversy exists between the parties.

**A.  H1 DESIGNATION**

16.  According to the LIP, the H1 category "*consists of habitats of highest biological significance, rarity, and sensitivity – alluvial scrub, coastal bluff scrub, dunes, wetland, native grassland and scrub with a strong component of native grasses or forbs, riparian, native oak, sycamore, walnut and bay woodlands, and rock outcrop habitat types.*"  LIP § 22.44.1810(A).

17.  Having learned, for the first time, of the H1 designation, Plaintiff demanded documentation, and the County produced a map which its Regional Planning Department admits creating (hereinafter "the H1 map").  A true and correct copy of the H1 map is attached hereto as Exhibit "A".  The purported H1

1   areas are shown on the map in green.

2        18.  The County admits that it has no evidence or substantial justification

3   for the coloring in of huge portions of private property as reflected on the H1 map,

4   including virtually all of Lot 11.

5        19.  So overbroad and unsubstantiated is this H1 mapping that it actually

6   includes PCH, a gas station, a parking lot, and rooftops.

7        20.  Moreover, the County is amply aware that it is impossible for

8   significant portions of the areas shown as H1 on the H1 map to constitute H1

9   zones.  For instance, as to Plaintiff's property, the County knows, having seen

10  that property numerous times, having been provided with site specific photos, and

11  as Plaintiff's property is easily visible from aerial photographs and Google Earth,

12  that Plaintiff's property is planted and has consistently been planted with ice plant

13  with a few palm trees.  Therefore, the green H1 demarcation on Lot 11 is actually

14  over ice plant and dirt pathways, and clearly not H1 as defined in the LIP.  As to

15  the Yang/Yazdani property, the County has itself taken the position, verbally and

16  in writing, that the areas designated as "H1" thereon had brush clearance, and

17  also currently contain SWPCP (Storm Water Pollution Control Plan) measures for

18  which the County issued a permit and the installation of which the County

19  approved and requires to be maintained.  The SWPCP measures cover the

20  Yang/Yazdani property hillside with visqueen, jute net, sandbags, and silt fencing,

21  etc.  As such, the Yang/Yazdani property cannot contain H1 zone growth, and,

22  *ipso facto*, Plaintiff's property cannot be within 200 feet of the H1 zone.

23       21.  Despite Plaintiff's requests and demands for any substantiation for this

24  government grab of private property, the County, while unabashedly confirming it

25  has none, and further confirming that it has not made any sort of individualized

26  determination even after Plaintiff's multiple requests that they do so, nonetheless

27  has refused and continues to refuse to change this H1 designation.

28  ///

**COMPLAINT FOR DAMAGES FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS**

22.  Plaintiff received no prior notice of the H1 designation, was unaware of the H1 designation, and, during the time that the California Coastal Commission was the responsible agency rather than the County, i.e., prior to 2014, in any of her interactions with the Coastal Commission regarding Plaintiff's property, Plaintiff received Coastal exemptions and permits, and the Coastal Commission never indicated that Lot 11 or Lot 12 or the Yang/Yazdani property was part of any H1 zone or the H1 designation.

23.  The County's expressed intent with the H1 designation is to permanently prevent development even though it is located on a private parcel.

24.  After 19 ½ years of ownership, a significant financial investment in Plaintiff's property, as well as an emotional attachment to her home, the County, without any justification or compensation, has taken a large portion of Plaintiff's property with the H1 designation and taken the remainder by placing it within 200 feet of an H1 zone.  As a result of virtually all of Lot 11 being designated as H1 without the ability to develop or protect it, and as a result of the designation of Lot 12 within 200 feet of the "H1 zone", and without any site specific biological review or any substantiation, the County illegally "took" more than ½ acre of Plaintiff's private property without notice, due process, or compensation.

25.  As a result of the H1 designation, Plaintiff has been deprived of all economic value and use of Lot 11.  In addition, Plaintiff will be unable to perform any remedial project to save Lot 11 from the domino movement effect of the Yang/Yazdani property.

26.  Further, as a result of the H1 designation, Plaintiff is prohibited from performing the remedial project to stop the movement of her legally permitted house and legally graded Lot 12 without paying the County to go through the "opt out" process which the County is unlikely to approve, and paying a private firm thousands of dollars for the preparation of a "biological assessment" which the County is unlikely to accept even if it shows that the H1 designation is wrong.

**COMPLAINT FOR DAMAGES FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS**

Plaintiff has already submitted evidentiary proof and letters from professionals in this regard, and the County rejected them.

### B. COASTAL BLUFF - LOT 11

27.  "Bluff" is defined in the LIP as a "*high bank or bold headland with a broad, precipitous, sometimes rounded cliff face overlooking a plain or a body of water with at least 10 feet of vertical relief*."  "Bluff edge" is defined in the LIP as follows: "*For coastal and canyon buffs, the bluff edge shall be defined as the upper termination of a bluff, cliff, or sea cliff*."  "Coastal Bluff" is defined in the LIP as a bluff "*whose toe is now or was historically (within the last 200 years) subject to marine erosion*".

28.  In addition to the H1 designation, the County designated Lot 11 to be beyond the Coastal Bluff edge. For Lot 11 – a gentle descending slope and a legally buildable and separately taxed lot – to be beyond the bluff edge is a physical impossibility and defies both gravity and the LIP definitions.

29.  A copy of the County's "Coastal Bluff" designation map is attached hereto as Exhibit "B" (hereinafter "the County's Coastal Bluff map"), and clearly demonstrates that there is no drop off point, no sharp decline, and no bluff edge. The County Coastal Bluff map represents an arbitrary "top of bluff" designation which the County knows is inconsistent with the conditions on the ground and intentionally inconsistent with the requirement that the County make these determinations location specific.

30.  So arbitrary and intentionally wrong is the County's Coastal Bluff map that it actually reflects a pool on two properties south of Plaintiff's property to be beyond the bluff edge, and presumably defying gravity hanging in mid-air, and, in another instance, likewise defying reason, going through interiors of properties which are sited on level graded pads not suspended in mid-air.  It is inconceivable in the first instance that the County was unaware of the gross errors as well as the gross property grab its map contains.

**COMPLAINT FOR DAMAGES FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS**

31.  Further, Plaintiff had commissioned a topographic study to map the bluff edge and topography, and presented the County with proof, including said study and photographs, that Lot 11 is not on the Coastal Bluff, and that it is literally physically impossible for it to be.  Despite this irrefutable evidence, the County has refused to withdraw the Coastal Bluff designations but has provided no substantiation for insisting on the same.

32.  Notably, the County also had in Plaintiff's property file documentation from another property within the same tract (which documentation Plaintiff had not seen before this particular dispute), that neither Plaintiff's property nor the hillside on which it and other properties are sited on a "Coastal Bluff" because the hillside does not adjoin the ocean as a road exists between this slope and Pacific Ocean (i.e., PCH), and because it is not and has not been impacted by marine erosion for 200 years.  The County has not presented any evidence to counteract these facts, but still refuses to remove the Coastal Bluff designations.

33.  As a result of the Coastal Bluff designations, Plaintiff has been deprived of all economic value and use of Lot 11, and deprived of a significant loss of economic value and use of Lot 12.  In addition, Plaintiff will be unable to perform any remedial project to protect Lot 11 from sliding, and prevented or delayed from protecting Lot 12.

**C.  COASTAL BLUFF – LOT 12 AND THE REMEDIAL PROJECT**

34.  LIP Section 22.44.820(3)(a) exempts from Coastal Development Permit ("CDP") requirement *"repair or maintenance activities that do not result in an addition to, or enlargement or expansion of, the object of those repair or maintenance activities.*"

35.  LUP and LIP policies must be consistent with Coastal Act's mandate that no CDP "shall be required" for "[r]epair or maintenance activities that do not result in an addition to, or enlargement or expansion of, the object of those repair or maintenance activities."  *Pub. Res. Code* § 30610(d)

**COMPLAINT FOR DAMAGES FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS**

36.  The remedial project falls squarely within said exemption.  The remedial wall does not result in an addition or enlargement or expansion of the "object" of the repair, to wit, the house proper and Lot 12 which are subject to creep/movement.

37.  The County, notwithstanding multiple requests from Plaintiff, has been unable to articulate why it will not exempt Plaintiff's remedial project from the requirement of obtaining a CDP other than to say that the remedial wall is "big".

38.  To the extent necessary or required, which is disputed, Plaintiff filed a timely claim against the County for allegations herein, which claim was denied.

## FIRST CAUSE OF ACTION

### (REGULATORY TAKING IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS, THROUGH 42 U.S.C. § 1983)

39.  Plaintiff hereby re-alleges each and every allegation contained in Paragraphs 1 through 38 as though fully set forth herein.

40.  The County's actions were "under color of State law" within the meaning of 42 U.S.C. § 1983, and this Court has jurisdiction over a civil action for damages alleging a violation of the United States Constitution.  28 U.S.C. § 1343.

41.  The California Coastal Act requires local governments with jurisdiction over "coastal zone" lands to adopt a Local Coastal Program (LCP) that has been certified by the California Coastal Commission.  *Pub. Res. Code* § 30500 The LUP is a general policy document that sets forth policies for coastal development and has the force of law.  The LIP is the collection of implementing ordinances that carry out LUP policies.  Both the LUP and LIP – together, the Local Coastal Program – must be consistent with the Coastal Act, as well as with the California and United States Constitutions.

42.  LUP and LIP policies must satisfy the constitutional requirement that the permitting authority make an individualized determination that permit conditions bear an "essential nexus" and "rough proportionality" to the alleged

1   impacts of the specific project before it.  *U.S. Const. Amend*. V (Takings Clause);

2   *Amend. XIV* (incorporating Takings Clause as against state and local

3   governments); see also *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 837 (1987)

4   (applying the unconstitutional conditions in the context of the Takings Clause of

5   the Fifth Amendment to the U.S. Constitution to require an "essential nexus");

6   *Dolan v. City of Tigard*, 512 U.S. 374, 392 (1994) (requiring "rough

7   proportionality" between permit conditions and a project's alleged impacts, and

8   establishing procedural rule that the burden is on the permitting authority to make

9   the individualized determination that a "nexus" and "rough proportionality" exist).

10       43.  The County's only justification for the H1 designation is that,

11   purportedly, the Coastal Commission required the same as a condition of the

12   County being able to take over the responsibilities and, with those, concomitant

13   financial benefits of processing permits and/or exemptions under the Coastal Act.

14   However, neither under the Federal Constitution nor California Constitution, can

15   any such action be valid if it violates either or both.  *Accord*, *Public Resources*

16   *Code Section* 30005.5: "*Nothing in this division shall be construed to authorize*

17   *any local government, or to authorize the commission to require any local*

18   *government, to exercise any power it does not already have under the*

19   *Constitution and laws of this state or that is not specifically delegated pursuant to*

20   *Section 30519.*"

21       44.  The County's policy is to require the property owner to bear the burden

22   and expense, including payments to the County, of establishing <u>lack</u> of "essential

23   nexus" and <u>lack</u> of "rough proportionality" between permit conditions and a

24   project's alleged impacts, and to bear the burden and expense, including

25   payments to the County, to make the individualized determination of the <u>lack</u> of

26   "nexus" and <u>lack</u> of "rough proportionality", even in circumstances, such as the

27   instant one, where the County admits that it has no basis or justification for the

28   H1 designation.  This policy violates the unconstitutional conditions doctrine

10

**COMPLAINT FOR DAMAGES FOR
VIOLATION OF FEDERAL CIVIL
RIGHTS (42 U.S.C. § 1983) AND
PENDENT STATE LAW CLAIMS**

under *Nollan* and *Dolan*, as, without limitation, it categorically dispenses with the constitutional requirement, under *Dolan*, that the permitting authority make an individualized determination of "nexus" and "rough proportionality" between permit conditions and the impact of the proposed project.

45.  In adopting the above-said policy, the County took legislative action in violation of the law and/or in excess of its authority.

46.  The Fifth Amendment to the United States Constitution, applied to the States through the Fourteenth Amendment, provides *"nor shall private property be taken for public use, without just compensation*."  U.S. Const. Amend. V.

47.  Plaintiff further alleges that the H1 designation does not substantially advance any legitimate state interest, the areas in question can only be viewed from Plaintiff's property or the two adjoining properties, does not serve any appropriate government purpose, constitutes an invalid regulation of land use and, as Justice Scalia stated in *Nollan, supra,* 483 U.S. at 837, "an out-and-out plan of extortion."

48.  The H1 designation constitutes a taking in violation of the Fifth and Fourteenth Amendments.

49.  The Coastal Bluff designations which, in this instance, include private land that does not fit the definitions of "Coastal Bluff" or "bluff edge", do not substantially advance any legitimate state interest, have no basis in fact or reality, do not serve any appropriate government purpose, are intentionally made to prevent development on private property and to force property owners like Plaintiff to go through the CDP process (profitable for the County coffers requiring $10,000 with each application at the outset with no guarantee of approval), and also constitutes an invalid regulation of land use and "an out-and-out plan of extortion."

///

///

11

**COMPLAINT FOR DAMAGES FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS**

50.  This policy of designating "Coastal Bluff" where no coastal bluff exists definitionally under the Coastal Act, where the land is not visible from the coast or public areas, as well as making the Coastal Bluff designations, and the policy of requiring private property owners to pay $10,000 to the County for a permitting process as well as incur tens of thousands of dollars in professional and other fees in such circumstances, likewise violates the unconstitutional conditions doctrine under *Nollan* and *Dolan*, as, without limitation, these policies and actions categorically dispense with the constitutional requirement, under *Dolan*, that the permitting authority make an individualized determination of "nexus" and "rough proportionality" between permit conditions and the impact of the proposed project.

51.  In adopting the above-said policy, the County took legislative action in violation of the law and/or in excess of its authority.

52.  The Coastal Bluff designations also constitute a taking in violation of the Fifth and Fourteenth Amendments.

## SECOND CAUSE OF ACTION

## (VIOLATION OF DUE PROCESS; FIFTH AND FOURTEENTH AMENDMENTS, THROUGH 42 U.S.C. § 1983)

53.  Plaintiff hereby re-alleges each and every allegation contained in Paragraphs 1 through 52 as though fully set forth herein.

54.  The Supreme Court has recognized that "a regulation that fails to serve any legitimate governmental objective may be so arbitrary or irrational that it runs afoul of the Due Process Clause."  *Lingle v. Chevron U.S.A Inc.*, 544 U.S. 528, 542 (2005)

55.  The Fourteenth Amendment provides that no State "shall deprive any person of life, liberty, or property, without due process of law."

56.  Due process requires that a party who is adversely affected by land department decision must be afforded proper notice of action to be taken or which has been taken.  The due process clause further requires that notice must

**COMPLAINT FOR DAMAGES FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS**

be reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests.  "[L]aws under which [administrative] agencies operate prescribe the fundamentals of fair play. They require that interested parties be afforded an opportunity for hearing and that judgment must express a reasoned conclusion." *Brandt v Hickel* (1970, CA9 Cal) 427 F2d 53 U.S. Const. Amend. V

57.  The County's decisions addressed hereinabove are arbitrary and irrational, and the H1 designation and the Coastal Bluff designations were made without proper notice and without due process.

**THIRD CAUSE OF ACTION**

**(VIOLATIONS OF THE CALIFORNIA CONSTITUTION, ARTICLE I §§ 1,7)**

58.  Plaintiff hereby re-alleges each and every allegation contained in Paragraphs 1 through 57 as though fully set forth herein.

59.  Article I § 1 of the California Constitution provides:

*All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.*

60.  Article I § 7 of the California Constitution provides in pertinent part:

*(a)  A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws*

61.  The LUP must respect the constitutional right of property owners to "protect property." Cal.Const.Art. I, § 1.

62.  Plaintiff further alleges that the County's actions as alleged hereinabove violate said sections of Article 1 of the California Constitution.

///

///

///

13

## FOURTH CAUSE OF ACTION

### (VIOLATION OF PUBLIC RESOURCES CODE § 30610)

63.  Plaintiff hereby re-alleges each and every allegation contained in Paragraphs 1 through 62 as though fully set forth herein.

64.  The County has violated *Pub. Res. Code* § 30610 by requiring Plaintiff to obtain a CDP.

65.  As a direct and proximate result of this violation, Plaintiff has and continues to sustain damages and incur costs, according to proof.

## FIFTH CAUSE OF ACTION

### (VIOLATION OF CALIFORNIA CONSTITUTION, ARTICLE XIII A; TAX LIMITATION INITIATIVE)

66.  Plaintiff hereby re-alleges each and every allegation contained in Paragraphs 1 through 65 as though fully set forth herein.

67.  Plaintiff further alleges on information and belief that the County's motivation for requiring the CDP is, without limitation, to increase the tax basis for property taxes which the County would otherwise be unable to do due to what is commonly known as Proposition 13.  By requiring the CDP and rejecting the exemption based on "repair" into which the remedial project clearly falls, the County's intent is to reassess Plaintiff's property to collect additional taxes.

68.  The County has and continues to violate Article XIII A of the California Constitution by, without limitation, refusing, without justification and in an abuse of discretion, if any discretion existed in the first instance, to categorize the retaining project as a "repair" for the purpose of reassessing Plaintiff's property for property tax purposes.

///

///

///

14

**COMPLAINT FOR DAMAGES FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS**

**SIXTH CAUSE OF ACTION**

**(VIOLATION OF FIRST AMENDMENT AND DEPRIVATION OF**

**EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT**

**OF THE U.S. CONSTITUTION)**

69.  Plaintiff hereby re-alleges each and every allegation contained in Paragraphs 1 through 68 as though fully set forth herein.

70.  The First Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, guarantees freedom of speech and freedom from governmental retaliation for the exercise of that right, including in the redress and criticism of government.

71. The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1.

72.  Under the Equal Protection Clause of the Fourteenth Amendment, discrimination based on sexual orientation is presumptively unconstitutional and subject to heightened scrutiny.

73.  Plaintiff is an openly gay woman, a fact of which the County has been aware for years.

74.  The County has had an egregious history with Plaintiff, resulting in a previous lawsuit by Plaintiff against the County for violation of her civil rights, and a judgment against the County under 42 U.S.C. § 1983 along with an award of attorney's fees pursuant to a Ninth Circuit decision.  A true and correct copy of that lawsuit and judgment are attached hereto collectively as Exhibit "C" and incorporated herein for background purposes only. In that lawsuit, Plaintiff successfully alleged that the County had violated her "civil rights and privileges, including equal protection under the law, and freedom from government harassment and interference with her property rights," and Plaintiff's sexual

**COMPLAINT FOR DAMAGES FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS**

orientation was likewise part of that litigation and became an issue when the County argued to deny Plaintiff attorney's fees for representation by her spouse. The Ninth Circuit rejected the County's arguments.

75. Plaintiff was hopeful that, following that judgment and fee award, the County and the officials interacting with Plaintiff regarding her home would move forward in a productive and non-discriminatory fashion. Unfortunately, not only did this not come to pass, but the individuals responsible for the prior judgment against the County were almost immediately promoted.

76. Plaintiff alleges on information and belief that, as a result of the County policies condoning civil rights violations in general and against Plaintiff in particular, the County has again violated Plaintiff's civil rights with disparate and punitive treatment based on her sexual orientation and exercise of her First Amendment rights of freedom of speech and redress of government.

**A. HISTORY**

77. For instance, and by way of background only, on the Yang/Yazdani property (the property referenced above as adjoining Plaintiff's property to the south) the prior owners, the Yazdanis, added to the square footage of the house without permits, had hired a man on a first name basis only – no company and no training -- rented two Bobcats, laid out water hoses as guides for hillside cuts, and began cutting and terracing the hillside with any "extraneous material" shoved over the toe of the hill above PCH onto and over the waler wall built and paid for by the state and federal governments. Any aerial photos or Google Earth depicting this wall show the wall plainly visible until it is directly under the Yang/Yazdani property where it is completely covered by dirt, reappearing the next house over.

78. Plaintiff notified the County of this illegal and dangerous project while it was occurring. The County, extremely familiar with the landslide issues on this hillside and these particular properties, initially refused to respond to this

complaint or investigate because Plaintiff was the person making the complaint and seeking protection of her property under the Building Code.[1]

79.  After Plaintiff continued to escalate the issue, the County sent out an employee who represented herself and whom the County represented to be an engineer but who had no such licensing.  The employee had never been on the Yang/Yazdani property, ignored the unpermitted house addition built in direct contravention to the Slide Waiver[2], ignored the unpermitted extension of the upper pad on which she was actually standing, and ignored illegal grading. Instead, standing on the unpermitted upper pad extension of the Yang/Yazdani property looking down on to the graded area, she determined there was only weed clearance, completely disregarding the contour changes between this and adjoining properties, the visible removal of Plaintiff's lateral support, and structural fence failure where no such failure existed on the opposite property line or even at the toe of the hill where movement susceptibility would have been

---

[1]  See also Exhibit "C" wherein it is described how the County did the same thing with Plaintiff's other adjoining property owners who were performing an unpermitted million dollar remodel and dumping in excess of 300 cubic yards or more than 50 roll off containers of construction debris onto the hillside above PCH (where the County now claims a Coastal Bluff), and into a large land fissure. In that instance, the illegal dumping was reported multiple times by the laborers witnessing the dumping who provided their names and contact information. Faced with the County's utter refusal to respond, Plaintiff had to litigate against both neighbors, prevailing and obtaining injunctive relief and damages as to each, with findings of intentional conduct and contempt proceedings against both.  The corrective measures/remediations on both neighboring properties were actually performed by Plaintiff when she (along with Ms. Roit) was appointed by two Superior Court Judges to supervise these remediations after the County refused to respond to enforce the Code which protects the citizenry, including Plaintiff, due to personal animus.  To date, despite Court findings and judgments and citations by the Coastal Commission and AQMD, the County has refused and continues to refuse to cite either property.

[2]  "Slide Waiver" is a recorded acknowledgment and requirement that no construction take place which adds to the square footage of the house due to the landslide issues caused by the added driving force to the hillside.

COMPLAINT FOR DAMAGES FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS

more prevalent, and also completely disregarding the house and pad additions which, under no theory, could have been categorized as "weed clearance."

80. The Yazdanis extended the flat upper rear pad of their property adjacent to the house, placing railroad ties 10'-15' high or more, backfilled to them with uncompacted uncertified fill, and then similarly installed earth and railroad tie platform stairs down to the lower lot with additional cut and fill – a clearly illegal operation. Concerned for her home and the hillside, Plaintiff again advised the County, which again refused to respond to this particular citizen's complaints even in the face of aerial photographs coincidentally taken by Cal Trans while this was occurring, thus allowing not only an illegal retaining structure, but improper and illegal fill causing water infiltration into the hillside in a historically landslide area.

81. Additionally without permits, the Yazdanis began jack hammering and demolishing the pool, which they filled with debris from their illegal unpermitted full house remodel.[3] The County, once again, intentionally ignored this citizen's complaints and photographic proof. When the Court, in a matter brought by Plaintiff, ordered the Yazdanis to cease the multi-year illegal construction, obtain permits, comply with Code, and turn off all utilities until the house could be deemed safe, the Yazdanis were unable to build a new illegal pool as intended on the lower lot, and decided to maintain the demolished pool despite the fact that the structural integrity of that pool had been grossly compromised if not destroyed. The County took the position that the pool was simply being "re-plastered" and issued a re-plastering permit. Not surprisingly, that pool has been demonstrated to leak, further exacerbating water infiltration – the number 1 cause of landslides.

///

---

[3] The entire upper pad on all four sides of the house also had debris feet deep covering so thoroughly so as to obscure any view of the soil.

COMPLAINT FOR DAMAGES FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS

82.  The County also allowed the pool equipment on the Yang/Yazdani property not only to be moved from its permitted spot, but placed within feet of the property line with Plaintiff's property in an underground "vault" cobbled together out of various discarded construction materials.  That equipment included a gas heater with the concomitant danger of explosion from trapped gas fumes and/or the walls of the unreinforced unpermitted vault collapsing.

83. The County was aware of all of these violations but did and continues to do nothing because the complaining party was the Plaintiff.

**B.  CURRENT MOVEMENT OF THE HILLSIDE**

84.  As a result of the historic violations untended to by the County and despite the danger to Plaintiff's home, the Cal Trans' waler wall, PCH, and the traveling public, the movement on the Yang/Yazdani property became apparent. The County was provided with documentation in the form, without limitation, of topographical comparisons delineating movement, and requested that County codes be enforced on that property, lest that movement migrate to Plaintiff's property and house proper.  Once again, the County refused to consider multiple studies delineating movement because it was submitted to the County by Plaintiff.

85. That movement has now migrated off site to Plaintiff's property and home, as confirmed in the February 8, 2016 topographical report, demonstrated that structures are now moving up to 4 inches – an alarming rate by any calculation.

86.  Plaintiff further alleges on information and belief that the County's actions and disparate treatment as alleged hereinabove subjected and/or caused Plaintiff to be subjected to deprivation of her civil rights and privileges in violation of the First and Fourteenth Amendments to the U.S. Constitution, including equal protection under the law, due process rights, and rights to be free of discrimination based on sexual orientation.

///

19

87.  As a direct and proximate result of this discrimination, Plaintiff suffered damages, according to proof.

### SEVENTH CAUSE OF ACTION

### (VIOLATION OF THE CALIFORNIA CONSTITUTION, ARTICLE 1 §§ 1,7)

88.  Plaintiff hereby re-alleges each and every allegation contained in Paragraphs 1 through 87 as though fully set forth herein.

89.  Article I § 1 of the California Constitution provides:

*All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.*

90.  Article I § 7 of the California Constitution provides in pertinent part:

*(a)  A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws*

91.  Plaintiff further alleges on information and belief that the County's actions as alleged hereinabove subjected and/or caused Plaintiff to be subjected to deprivation of her civil rights and privileges in violation of said sections of Article I of the California Constitution, including equal protection under the law, violation of First Amendment rights, violation of due process rights, and discrimination against Plaintiff based on her sexual orientation.

92.  As a direct and proximate result of this discrimination, Plaintiff suffered damages, according to proof.

///

///

///

**COMPLAINT FOR DAMAGES FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS**

1

**PRAYER FOR RELIEF**

2

WHEREFORE, Plaintiff prays for judgment from this Court as follows:

3

**ON THE FIRST, SECOND AND THIRD CAUSES OF ACTION**

4

1.  Declaratory and injunctive relief removing the H1 designation from

5

Plaintiff's property and from impacting Plaintiff's property in any way;

6

2.  Declaratory and injunctive relief removing any and all "Coastal Bluff"

7

designations from Plaintiff's property and from impacting Plaintiff's property in any

8

way;

9

3.  For damages for these unlawful regulatory takings, in an amount to be

10

determined at trial;

11

4.  An award to Plaintiff of reasonable attorneys' fees and expert fees for

12

bringing and maintaining this action, including under 42 U.S.C. § 1988;

13

5.  An award to Plaintiff of costs of suit pursuant to Federal Rules of Civil

14

Procedure 54(d); and

15

6.  An award to Plaintiff of any other and further relief that the Court deems

16

just and proper under the circumstances of this case.

17

**ON THE FOURTH AND FIFTH CAUSES OF ACTION**

18

7.  A judicial finding that the County's refusal to categorize the remedial

19

project as "repair" is arbitrary and irrational, and violates *Pub. Res. Code* §

20

30610;

21

8.   A judicial finding that the County's refusal to categorize the remedial

22

project as "repair" is arbitrary and irrational, and violates Article XIII A of the

23

California Constitution;

24

9.  For damages in an amount to be determined at trial;

25

10.  An award to Plaintiff of costs of suit pursuant to Federal Rules of Civil

26

Procedure 54(d); and

27

11.  An award to Plaintiff of any other and further relief that the Court

28

deems just and proper under the circumstances of this case.

**COMPLAINT FOR DAMAGES FOR
VIOLATION OF FEDERAL CIVIL
RIGHTS (42 U.S.C. § 1983) AND
PENDENT STATE LAW CLAIMS**

**ON THE SIXTH CAUSE OF ACTION**

12.  For damages in an amount to be determined at trial;

13.  An award to Plaintiff of reasonable attorneys' fees and expert fees for bringing and maintaining this action, including under 42 U.S.C. § 1988;

14.  An award to Plaintiff of costs of suit pursuant to Federal Rules of Civil Procedure 54(d); and

15.  An award to Plaintiff of any other and further relief that the Court deems just and proper under the circumstances of this case.

**ON THE SEVENTH CAUSE OF ACTION**

16.  For damages in an amount to be determined at trial;

17.  An award to Plaintiff of costs of suit pursuant to Federal Rules of Civil Procedure 54(d); and

18.  An award to Plaintiff of any other and further relief that the Court deems just and proper under the circumstances of this case.

DATED: June 10, 2016                    Respectfully Submitted,

LAW OFFICES OF NATASHA ROIT

*Natasha Roit*

_____
BY: NATASHA ROIT
Attorneys for Plaintiff

22

**COMPLAINT FOR DAMAGES FOR
VIOLATION OF FEDERAL CIVIL
RIGHTS (42 U.S.C. § 1983) AND
PENDENT STATE LAW CLAIMS**