# EXHIBIT A



# EXHIBIT B



**LOS ANGELES COUNTY**

## LOCATION OF APNS 4443-003-012 AND 4443-003-011 RELATIVE TO 50' LINE OF PROXIMITY FROM TOP OF COASTAL BLUFF

**SANTA MONICA MOUNTAINS LOCAL COASTAL PROGRAM**

**LEGEND**

- - - — *50' LINE OF PROXIMITY FROM TOP OF COASTAL BLUFF\**

☐ *PROPERTY IN QUESTION*

☐ *ASSESSOR PARCEL*

*AERIAL IMAGERY SOURCE: LAR-IAC 2014*

*\* THE 50-FOOT LINE OF PROXIMITY WAS DETERMINED BY CREATING A 250-FOOT BUFFER FROM THE PERMIT APPEAL LINE THAT REPRESENTS "300 FEET FROM TOP OF COASTAL BLUFF", AS DEFINED BY THE CALIFORNIA COASTAL COMMISSION.*

  

**LOS ANGELES COUNTY
DEPT. OF REGIONAL PLANNING
320 W. TEMPLE ST.
LOS ANGELES, CA 90012**

**FEET**
0    20    40

PRINTED ON: _____

PREPARED / REVISED BY DRP GIS SECTION / MARCH 2016

\DRP_ADVANCE_PLANNING\community_studies\map_documents\Coastal_Zone\CCC_Post_LCP_Certification_Jurisdiction\APN_4443-003-012.mxd

EXHIBIT C

3/24

LAW OFFICES OF NATASHA ROIT
BY: NATASHA ROIT, SBN 125216
3929 MALIBU VISTA DRIVE
MALIBU, CALIFORNIA 90265
TELEPHONE (310) 657-7871
FACSIMILE (310) 657-3026

ATTORNEYS FOR PLAINTIFF, REBECCA A. RICKLEY

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| REBECCA A. RICKLEY,<br><br>    PLAINTIFF,<br><br> v.<br><br>COUNTY OF LOS ANGELES, WILLIAM HOWARD, KEVIN PETROWSKY, SOHEILA KALHOR, MICHAEL TRIPP, AND DOES 1 THROUGH 20, INCLUSIVE,<br><br>    DEFENDANTS. | CASE NO: SC095515<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER**<br>**1) 42 U.S.C. §1983 ET SEQ.**<br>**2) CALIFORNIA CONSTITUTION, ART. I, §§1, 7**<br><br>ASSIGNED FOR ALL PURPOSES TO THE HONORABLE JUDGE, JOSEPH S. BIDERMAN, DEPT. "K"<br><br>TRIAL DATE:  None Set |

Plaintiff alleges:

1. Plaintiff, REBECCA A. RICKLEY, is, and at all times pertinent hereto, was a resident of the County of Los Angeles, State of California, and an owner of a property located at 3929 Malibu Vista Drive, Malibu, California 90265.

FIRST AMENDED COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER 42 U.S.C. §1983
AND CALIFORNIA CONSTITUTION
1

EXHIBIT 10

057

1       2. Defendant, COUNTY OF LOS ANGELES, is an agency of the State of California, and

2  and is also known as, and will be hereinafter referred to as the COUNTY.

3       3. On information and belief, and representations of COUNTY representatives,

4  DEPARTMENT OF PUBLIC WORKS also known as the DEPARTMENT OF BUILDING AND

5  SAFETY, is a department of the COUNTY and not a separate legal entity, and is being referenced

6  herein not as a Defendant, but as the Department of the COUNTY and will be hereinafter referred to

7  as "DPW."

8       4. Defendant, WILLIAM HOWARD ("HOWARD"), is, and at all times relevant hereto, has

9  been, an employee and/or agent of DPW and the COUNTY.

10       5. Defendant, KEVIN PETROWSKY ("PETROWSKY"), is, and at all times relevant hereto,

11  has been, an employee and/or agent of DPW and the COUNTY.

12       6. Defendant, SOHEILA KALHOR ("KALHOR"), is, and at all times relevant hereto, has

13  been, an employee and/or agent of DPW and the COUNTY, and, on information and belief, the

14  supervisor of HOWARD and PETROWSKY.

15       7. Defendant, MICHAEL TRIPP ("TRIPP"), is, and at all times relevant hereto, has been, an

16  employee and/or agent of DPW and the COUNTY.

17       8. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1

18  through 20, inclusive, and, therefore, sues said Defendants by such fictitious names. Plaintiff will

19  amend this Complaint to allege their true names and capacities when these are ascertained. Plaintiff

20  is informed and believes and thereon alleges that each of the fictitiously named defendants is

21  responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein

22  alleged were proximately caused by the conduct of such fictitiously named defendants.

23       9. Venue is proper herein as the property in question is located within the jurisdictional

24  borders of the above-entitled Court.

25  ///

26

27               FIRST AMENDED COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER 42 U.S.C. §1983

                   AND CALIFORNIA CONSTITUTION

28                        2

1    10.  Plaintiff has complied with the *Government Code* claim requirements prior to the filing

2    of this lawsuit.

3    ## ALLEGATIONS PERTINENT TO ALL CAUSES OF ACTION

4    11.  Plaintiff hereby incorporates paragraphs 1 through 10 hereinabove as though fully stated

5    herein.

6    12.  Plaintiff resides in an area in unincorporated Malibu commonly referred to as Sunset

7    Mesa. Her home, as well as contiguous homes, are located on a well known landslide and abut

8    Pacific Coast Highway and Topanga Canyon, major thoroughfares in the State of California.  This

9    area has, for years, been the subject of landslide studies and, more recently, has been the subject of a

10   multi-million dollar shoring project by the State of California with the assistance of the Federal

11   government.  It is against this background that this case arises and, as described in more detail below

12   on information and belief, stems from a policy and/or custom and usage of and by the COUNTY, by

13   and through the Calabasas Office of DPW which is in charge of the subject area, to, but without

14   limitation, steer away from, ignore, and turn a blind eye toward illegal construction in this landslide

15   area in order to, but without limitation, avoid the meticulous, and sometimes onerous geotechnical

16   requirements for the work to be performed and to be worked up and reviewed by DPW, to avoid

17   potential liability for issuance of permits, and to discourage, dissuade and, if undeterred, retaliate

18   against individuals who make complaints regarding what has become a virtual epidemic of

19   extensive, illegal construction in the area, and, in general, those who challenge the determinations of

20   the COUNTY regarding such construction, so as to discourage such ongoing complaints to allow the

21   COUNTY to claim lack of knowledge of and, thus, lack of responsibility for such construction.

22   13.  Plaintiff resides between two property owners within said landslide area who have, for

23   years and routinely, violated the County codes and have been declared by the Court to be a public

24   and private nuisance in one instance and a private nuisance in the other.

25   ///

26

27   FIRST AMENDED COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER 42 U.S.C. §1983

28   AND CALIFORNIA CONSTITUTION

3

14. **GOODFRIEND**. One adjacent neighbor is Marvin Goodfriend (hereinafter "Goodfriend"), and his property is directly above the Thrifty gas station, which Thrifty looks to reopen in the near future. During a major illegal unpermitted construction in 2001 at a cost exceeding $1 million, Goodfriend, instead of taking tons of construction debris to the dump as the law requires, instructed his workers to take it to "low spots" on his property and bury it under inches of dirt and ice plant. The debris was not of the proper size or compaction for legal fill and violated compaction laws which are intended, in part, to repel water infiltration into the hillside. The debris consisted of cement, roofing and patio tiles, large sections of brick and mortar, stucco, 2 x 4's, plywood, chicken wire, cement grout, iron and wire mesh, ceramic tiles, lime mortar, re-enforcing steel, plastic pipe, duct tape, mastic, as well as broken plaster pieces with paint attached, metal lath protruding from pieces, plastic (PVC) parts from plumbing installation, and caulking materials. The extent of the debris in one area only was 274 cubic yards, and had tested positive for asbestos and lead. Further, the debris changed the grade on the Goodfriend property, elevating it in relation to Plaintiff's property, changed drainage from Goodfriend's property onto Plaintiff's property, increased water infiltration into the hillside to the detriment of the stability of the hill, and caused a settlement on Plaintiff's property. Further, Goodfriend maintained thick, dense, high foliage (mostly oleanders) on his property going down the property line with Plaintiff's property that, in places was 15 to 20 feet high.

15. When Plaintiff discovered the dumping of construction debris by Goodfriend, she asked him to remove it. He would not. When these and other efforts failed, Plaintiff reported Goodfriend to the COUNTY, and, more specifically, Defendant KALHOR, with evidence supporting the complaint, who repeatedly and consistently ignored her complaints. Ultimately, Plaintiff had no choice but to bring a civil action, titled *Rickley v. Goodfriend, et al* (SC 081696) in order to, but without limitation, obtain a court order for such removal. Shortly before trial, Goodfriend, without notice to or knowledge by Plaintiff, applied to the COUNTY for a permit exemption for "removing"

1  the debris from his property, intentionally underestimating the extent of the debris field to be under

2  50 cubic yards. When Plaintiff, through discovery, learned of this application, she again submitted

3  to the COUNTY extensive records, expert declarations, photographs, etc. indicating that the debris

4  field was 274 cubic yards and that a permit had to be obtained along with geotechnicals so that any

5  work on the hillside was performed in a manner that did not reactivate the slide or cause damage to

6  adjoining properties. Defendant KALHOR ignored all of the documentation provided by Plaintiff,

7  and ordered that Goodfriend be granted an exemption. Fortunately, the California Coastal

8  Commission ("CCC") to whom Goodfriend applied for an exemption with the same intentional

9  underestimation, reviewed the documentation also provided to them by the Plaintiff, and denied his

10  exemption request, allowing the matter to proceed to trial without irreparable hillside modifications.

11      16. During the time that Plaintiff was struggling to get the COUNTY to enforce its own

12  codes to no avail, and addressing these issues to KALHOR, she submitted multiple verbal and

13  written complaints to Supervisor Zev Yaroslavsky's office, and was vocal in her criticism of the

14  COUNTY and its employees, including KALHOR, regarding their utter inaction. Defendant

15  KALHOR and the COUNTY were aware of these complaints.

16      17. When the *Rickley v. Goodfriend, et al* case finally went to trial, the Court found in favor

17  of Plaintiff and declared the condition on the Goodfriend property to constitute a private nuisance,

18  found that the debris field, addressed and known to Plaintiff in that case, was indeed 274 cubic yards,

19  and ordered it to be abated based on and utilizing Plaintiff's expert at a budget of approximately

20  $260,000.00. Further, Goodfriend was ordered to obtain any and all necessary permits for the

21  remediation.

22      18. The COUNTY generally and KALHOR specifically were apprized verbally in a meeting

23  and in writing of their significant error and/or intentional refusal to require a permit based on the

24  policy stated above, and were further advised that Plaintiff had prevailed in her litigation. The

25  COUNTY was then forced to revisit the permit issue. However, with a court order in place for the

26

27  FIRST AMENDED COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER 42 U.S.C. §1983

28  AND CALIFORNIA CONSTITUTION

5

1    removal of 274 cubic yards, and notwithstanding its previous erroneous conclusion that the debris

2    field was under 50 cubic yards, which underestimation along with turning a blind eye to it, could

3    have lead to disastrous results on the hillside, the COUNTY in general and KALHOR specifically

4    still did not request that Goodfriend obtain a grading permit with the concomitant pre-testing,

5    inspections and safety measures. Further, said Defendants did not even order Goodfriend to comply

6    with NPDES requirements to cover the debris area and forced Plaintiff, yet again, to bring a motion

7    before the court to obtain such compliance and to tarp the area, which Motion was granted. Again,

8    Plaintiff was vocal in her complaints and criticisms of the COUNTY in general and the Calabasas

9    office of DPW in particular, and said Defendants were aware of these complaints.

10      19. **YAZDANI.** The other adjacent neighbor is Shahriar Yazdani (hereinafter "Yazdani").

11    Since purchasing his property in 1998, Yazdani kept it in a dilapidated condition, starting and

12    stopping construction with no permits, using unlicensed workers, performing construction in the

13    middle of the night, all in all, creating extraordinary illegal conditions for almost 10 years next to

14    Plaintiff's property. Similarly, Plaintiff complained to the COUNTY and the Calabasas office of

15    DPW generally and KALHOR specifically about the ongoing extreme and illegal activities and

16    unbearable conditions on the Yazdani property. Other than sending Yazdani letters and issuing

17    Notice of Violation which they did not enforce, and only after Plaintiff repeatedly complained, the

18    COUNTY, by and through its Calabasas office, and in furtherance of its policy and/or custom and

19    usage as described above, did not stop the Yazdani construction, again forcing Plaintiff to proceed to

20    Court to enforce County codes.

21      20. Plaintiff sued Yazdani as a co-defendant in the *Rickley v. Goodfriend, et al* action. The

22    Court found, without limitation, Yazdani's property to constitute a public and private nuisance, and

23    ordered him to abate the nuisance and to obtain all necessary permits. The COUNTY generally and

24    KALHOR specifically was advised of this Judgment as well. During that litigation, Yazdani

25    testified that certain representatives of the COUNTY actually told him that despite the Notices of

26

27

28

FIRST AMENDED COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER 42 U.S.C. §1983<br>AND CALIFORNIA CONSTITUTION

6

1   Violation, they were not going to shut him down or enforce the codes because they did not want to

2   deal with the subject landslide prone area.  Also, when asked by the Court in that trial why he did

3   not stop his illegal construction despite the Notices of Violation, Yazdani testified that if the County

4   wanted to stop him, they would have, and that they advised him that they were not going to stop him.

5          21.  Even after obtaining permits per court orders, Yazdani continued to violate County codes

6   as well as the Judgment, and was found in contempt of court four times.  Through this, Plaintiff

7   continued to report these violations to the COUNTY generally and KALHOR specifically, and

8   complain about and criticize vocally their inaction both as to Goodfriend and Yazdani.

9          22.  Subsequent to Plaintiff's obtaining the Judgment, the COUNTY assigned Defendant

10  HOWARD to the Yazdani property as the inspector.  Plaintiff alleges on information and belief that

11  HOWARD became personally friendly with Yazdani and performed his function in a manner that

12  would be most helpful to Yazdani and detrimental to Plaintiff.  HOWARD has been observed

13  visiting with Yazdani, loudly chatting about personal matters, and spending personal time with him.

14         23. On or about January 6, 2007, notwithstanding the Judgment against him and the four

15  contempt findings, and as Plaintiff was leaving for vacation on January 8, Yazdani obtained Bobcats,

16  and began to do earth work on the hillside, without County permits, without approval of the CCC,

17  significantly changing the contours of the hillside and impacting Plaintiff's lateral support.  Once

18  again, Plaintiff was placed in the position of having to contact the COUNTY generally and

19  KALHOR specifically, and complain about Yazdani's ongoing actions.  This time, despite the fact

20  that there were open permits on the YAZDANI property and HOWARD was assigned to monitor the

21  construction, the COUNTY, in what had become its patterned tired and lackluster response based on

22  its overall policy as described above, sent out Rachel Burke who the COUNTY represented as a

23  "supervising engineer" despite the fact that she is not licensed in the State of California, and

24  HOWARD, to "view" the area.  Without any investigation, inspection, or, indeed, even without

25  walking down the approximately 20 steps to the subject portion of the property, and without

26

27         FIRST AMENDED COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER 42 U.S.C. §1983

28                               AND CALIFORNIA CONSTITUTION
                                              7

1   comparison to previous topographic surveys already in the County possession or photographs, Burke
2   and HOWARD declared that there was no "grading" occurring or anything which required permits.
3   The COUNTY maintained its position even after Plaintiff submitted a Declaration from a licensed
4   structural engineer with over 30 years experience on Malibu hillsides and intimate familiarity with
5   this particular hillside. Again, Plaintiff was vocal about the COUNTY's actions and inactions in this
6   respect to third parties, and to Yaroslavsky's office.

7       24. On January 26, 2007, HOWARD and Burke were called to testify as witnesses in another
8   matter involving Yazdani, this one brought by his other adjacent neighbor in order to obtain her own
9   injunction against Yazdani's illegal work on his property. Plaintiff was present during the testimony,
10  and the testimony has been transcribed. On information and belief, HOWARD, being called to
11  testify by Yazdani's counsel, was there to assist Yazdani and to retaliate against Plaintiff to the point
12  of providing exaggerated, untruthful, and, at points, perjurious testimony, including a statement that
13  DPW were getting complaint calls virtually on a daily basis complaining about Yazdani's property.
14  Further, the COUNTY, by and through DPW, on information and belief, authorized and encouraged
15  Rachel Burke to take the stand and testify that she was an engineer who had examined the site when,
16  in fact, Ms. Burke was not a licensed engineer in the State of California and was not permitted to
17  claim herself to be an engineer. On information and belief, the testimony from HOWARD and
18  Burke was intended to retaliate against Plaintiff (as well as other complaining neighbors), and to
19  intentionally skew the testimony to assist Yazdani. Plaintiff again addressed this issue with the
20  COUNTY, including KALHOR and County Counsel, and brought it to the attention of Supervisor
21  Yaroslavsky's office, of which said Defendants were aware.

22      25. Unlike DPW, the CCC, following an appropriate non-retaliatory inspection of the
23  Yazdani property issued a Notice of Violation letter to Yazdani, confirming that grading was in fact
24  performed by Yazdani in January 2007, and ordering Yazdani to apply for permits, which, as of the
25  date of this First Amended Complaint, Yazdani still had not done. Additionally, Plaintiff has had
26
27  **FIRST AMENDED COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER 42 U.S.C. §1983**
    **AND CALIFORNIA CONSTITUTION**
28                                          8

1    her own comparison performed of an old topographical survey with a new one that she had

2    commissioned, and determined that, of the area available to be compared which excludes a large

3    portion of the Yazdani property, approximately 300 cubic yards were graded in the Bobcat operation

4    in January 2007, significantly exceeding the 50 cubic yards which trigger the necessity for the

5    COUNTY permit in any location, let alone a geotechnically sensitive one where geotechnical studies

6    are necessary before proceeding.

7    **RETALIATION**

8          26.  As a result of Plaintiff's complaints about the COUNTY's (including the Calabasas

9    DPW office) and Defendant KALHOR's actions and inactions as described hereinabove, and the

10   exercise of, but without limitation, Plaintiff's First Amendment rights, the COUNTY generally

11   (based on its policy and/or custom and usage as described herein), and the individual Defendants

12   named herein, on information and belief, increased their retaliatory activities against Plaintiff.

13         27.  On March 28, 2007, Plaintiff was making cosmetic changes and certain repairs to the

14   exterior of her property, which amounted to nothing more than re-stucco'ing of the house and

15   
16   removal of a rock facia.  The work was being done by a licensed contractor.  The COUNTY

17   generally and, on information and belief, KALHOR specifically, sent out Defendant PETROWSKY

18   to Plaintiff's property with Rachel Burke, the unlicensed engineer referenced above, who were both

19   aware of Plaintiff's previous complaints about their Department.  Notwithstanding that the work

20   being performed did not require a permit, in retaliation for Plaintiff's previous vocal complaints,

21   
22   PETROWSKY approached Plaintiff's property, yelled out at the top of his lungs "Building and

23   Safety!  Stop all work!".  He then served on Plaintiff a stop work notice that had been filled out prior

24   to his arrival at Plaintiff's property, and stood in Plaintiff's front yard screaming at the workers that

25   
26   
27   
28   

FIRST AMENDED COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER 42 U.S.C. §1983
AND CALIFORNIA CONSTITUTION
9

they can do nothing more, specifically including in his instruction stopping all work on stucco which required no permit. PETROWSKY then refused to provide his business card upon request, stating instead "this is my card" while pointing to the unsigned Notice of Violation. Then, in an aggressive and unnecessarily abrasive manner, PETROWSKY proceeded onto Plaintiff's property and, despite multiple requests that he not proceed further, continued unabated, snapping photographs including the interior of Plaintiff's home through the windows, and sarcastically stating "Got it anyway."

28. On June 27, 2007 at 3:36 p.m., Plaintiff inquired of County counsel in writing whether Yazdani had been given a permit to enclose his atrium, as Plaintiff had observed activity which indicated that Yazdani was indeed enclosing his atrium, which violated the Slide Waiver that Yazdani was ordered to comply with as a portion of the Judgment in *Rickley v. Goodfriend, et al.* County counsel responded that the inquiry should be directed to DPW, which Plaintiff did. Virtually immediately thereafter, on the morning of June 29, 2007, instead of an investigation of Yazdani's atrium enclosing activities, the COUNTY generally and Defendants PETROWSKY and HOWARD specifically, based on information and belief under the direct instruction of Defendant KALHOR, served Plaintiff with yet another Notice of Violation. Again, said Notice was composed prior to arival at or inspection of Plaintiff's property. This one purportedly for "Alteration/Repair of a Trellis" in her atrium and demanding submission of plans within 10 days even though Plaintiff did nothing whatsoever that required a permit or warranted the Notice of Violation. In fact, every home of Plaintiff's model in Plaintiff's tract consisting of four models has visible entry trellises, and the "alteration" consisted of removing paint placed there by prior owners and putting varnish instead of

FIRST AMENDED COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER 42 U.S.C. §1983
AND CALIFORNIA CONSTITUTION
10

1 paint, and placing a decorative routered edge. Indeed, this trelis is not only a feature in this model of

2 home, but there are decades of aerial photos showing this trelis on Plaintiff's home. Despite

3
repeated requests for the withdrawal of this "Notice of Violation", the COUNTY, through
4
5 PETROWSKY, HOWARD, and KALHOR refused and continue to refuse to do so, claiming instead

6 that they are "looking into it."

7      29. Plaintiff further complained to the COUNTY generally and KALHOR and TRIPP (who

8 Plaintiff was advised was in charge of this particular issue for the COUNTY) specifically, about
9
10 Goodfriend maintaining on his property an extreme overgrowth of dense foliage which violated

11 County codes being in excess of six feet and in places as high as 15-20 feet. Here again, the

12 COUNTY, for years, did nothing, forcing Plaintiff to deal with this issue in the *Rickley v.*

13 *Goodfriend, et al* litigation, wherein she also received a judgment in her favor on that issue. After

14
15 the trial of this matter, with Court order in hand, and not to further burden the Court, Plaintiff

16 requested repeatedly that KALHOR and/or TRIPP pay a visit to the property to investigate the

17 complaint. Plaintiff also complained to KALHOR and TRIPP that the ground on which this foliage

18 was grown was notably higher, in places 2-3 feet higher than Plaintiff's property, and that she was

19 concerned that this was indicative of another and yet undiscovered debris field. KALHOR and

20
21 TRIPP refused Plaintiff's requests. However, when Plaintiff then sought the intervention of the

22 Court vis-a-vis contempt on this issue, Goodfriend requested the same visit from TRIPP, who not

23 only sent out an inspector, but repeatedly issued non-violation letters to him forthwith. Upon

24 learning of these visits and the issuance of the letters, Plaintiff again requested that TRIPP visit to

25

26

27      FIRST AMENDED COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER 42 U.S.C. §1983
           AND CALIFORNIA CONSTITUTION
28                                    11

1   observe the foliage from her property as well as the differentiation in height and, indeed, dirt erosion

2   where now the additional debris, previously undiscovered and not dealt with in the 274 square feet,

3
4   was visible, and forwarded photographs of the overgrowth to TRIPP. TRIPP finally acquiesced and

5   sent an employee to Plaintiff's property. Both TRIPP and the inspector verbally advised Plaintiff

6   that the foliage appeared in violation of the codes, but refused to provide any substantiation to

7   Plaintiff, claiming that the COUNTY does not do that. Simultaneously, however, TRIPP continued

8
9   to provide letters to Goodfriend stating that he was not in violation. Again, Plaintiff had to proceed

10  to Court to obtain relief, and, faced with photographic evidence provided by Plaintiff as opposed to

11  the COUNTY letters, the Honorable Judge Cesar Sarmiento, had to take his time to inspect the

12  property personally wherein he rejected the COUNTY's letter, found Goodfriend not in compliance

13  with the County codes and his orders, and ordered Goodfriend again to bring his property into

14
15  compliance or face contempt. The COUNTY in general and TRIPP specifically were apprised of

16  this decision, but continued unabated, issuing letters to Goodfriend in a transparent attempt to

17  interfere with the enforcement of a Court order by Plaintiff and in retaliation for Plaintiff's

18  complaints. As a result of the COUNTY's and TRIPP's interference and disparate treatment,

19  Plaintiff had to bring a contempt proceeding against Goodfriend, who, in reliance on TRIPP's letters,

20
21  was avoiding compliance with court order. Finally, after the hearing on the OSC re: contempt,

22  Goodfriend complied and cut his foliage to be in compliance with the County codes and the

23  judgment against him.

24  ///

25

26

27      FIRST AMENDED COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER 42 U.S.C. §1983
                        AND CALIFORNIA CONSTITUTION
28                                    12

30. Further, during the period of time described in this First Amended Complaint, Plaintiff had served the COUNTY, through DPW, requests for documents pertaining to the Yazdani property under the California Public Records Act ("CPRA"). The COUNTY, through DPW, first delayed its response and when finally responding, withheld documents pertaining to the Yazdani property which were helpful to Plaintiff and/or necessary for her to enforce her Judgment against Yazdani. Plaintiff was unaware of the existence of these documents until they were used by Yazdani in litigation. But notwithstanding the existence of these documents in their files and request for all such records, only after Plaintiff filed a lawsuit under the CPRA, did the COUNTY acquiesce in turning those documents over to Plaintiff.

31. Further, during this period of time, the COUNTY, through PETROWSKY, HOWARD, and KALHOR repeatedly failed to document a number of Yazdani violations, and diminished the Notices of Violations they issued on Yazdani only after neighbor complaints, claiming they were "punch lists" while the same Notices served on Plaintiff were "actual violations".

### FIRST CAUSE OF ACTION

### VIOLATION OF 42 U.S.C. §1983 ET SEQ.

### AGAINST ALL DEFENDANTS

32. Plaintiff hereby incorporates paragraphs 1 through 31 hereinabove as though fully stated herein.

33. Plaintiff alleges on information and belief that Defendants, and each of them, acting under color of law, with the actions and omissions, including without limitation, the retaliatory

actions described in paragraphs 26 through 31, subjected and/or caused Plaintiff to be subjected to deprivation of her civil rights and privileges, including equal protection under the law, and freedom from government harassment and interference with her property rights, all in violation of, but without limitation, 42 U.S.C. §1983.

34. Plaintiff further alleges on information and belief that Defendants, and each of them, in violating Plaintiff's rights, as alleged hereinabove, acted in conspiracy with each other to violate and deprive Plaintiff of her civil rights and deny her equal protection under the law, all in violation of, but without limitation, 42 U.S.C. §1985, including without limitation, and on information and belief, discussions among themselves of ways to retaliate against Plaintiff for her ongoing complaints.

35. Plaintiff further alleges on information and belief that, in addition to Defendant KALHOR's own actions as described above, Defendant KALHOR and DOES 5 through 10, inclusive, were the supervisors of Defendants HOWARD and PETROWSKI, and had knowledge of the wrongs conspired to be done and/or about to be committed, as alleged hereinabove, and having power to prevent or aid in preventing the commission of the same, neglected and/or refused to do so. Further, having had actual or constructive knowledge of the wrongful conduct alleged herein, said Defendants' actions were so inadequate that they showed deliberate indifference to or tacit authorization of the alleged offensive practices, and had KALHOR or DOES 5 through 10 acted as opposed to failed to act, HOWARD and PETROWSKI would not have conducted themselves in this retaliatory manner alleged herein, all in violation of 42 U.S.C. §1986.

///

36. As a direct and proximate result of the Defendants' wrongful conduct, as alleged herein, Plaintiff suffered damages, according to proof.

37. The aforementioned actions of the individual Defendants, and each of them, were despicable, and carried on with a wilful and conscious disregard for Plaintiff's rights when Defendants were fully aware of the possible harmful consequences of such conduct. Defendants further wilfully and deliberately failed to avoid these consequences, subjecting Plaintiff to an unjust hardship in conscious and wilful disregard of her rights, so as to justify an award of exemplary and punitive damages.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE CALIFORNIA CONSTITUTION

## AGAINST ALL DEFENDANTS

38. Plaintiff hereby incorporates paragraphs 1 through 37 hereinabove as though fully stated herein.

39. Plaintiff further alleges on information and belief that the actions and omissions of Defendants, and each of them violated the enactments of the California Constitution, Article I, Sections 1 by, without limitation, under color of law, interfering with Plaintiff's protection of her property, and her pursuit and obtainment of safety, happiness, and privacy.

40. Plaintiff further alleges on information and belief that the actions and omissions of Defendants, and each of them violated the enactments of the California Constitution, Article I, Sections 7 by, without limitation, under color of law, depriving Plaintiff of due process and equal

FIRST AMENDED COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER 42 U.S.C. §1983
AND CALIFORNIA CONSTITUTION
15

protection under the law.

41. As a direct and proximate result of the Defendants' wrongful conduct, as alleged herein, Plaintiff suffered damages, according to proof.

42. The aforementioned actions of the individual Defendants, and each of them, were despicable, and carried on with a wilful and conscious disregard for Plaintiff's rights when Defendants were fully aware of the possible harmful consequences of such conduct. Defendants further wilfully and deliberately failed to avoid these consequences, subjecting Plaintiff to an unjust hardship in conscious and wilful disregard of her rights, so as to justify an award of exemplary and punitive damages.

WHEREFORE, Plaintiff prays for damages as follows:

1. For general and consequential damages, according to proof;

2. For punitive and exemplary damages against individual Defendants, according to proof;

3. For attorneys' fees, according to proof;

4. For costs of suit incurred herein; and

5. For such other and further relief as deemed appropriate by this Court.

DATED: March 24, 2008            LAW OFFICES OF NATASHA ROIT

_____
BY: NATASHA ROIT
ATTORNEYS FOR PLAINTIFF

## PROOF OF SERVICE
1031A (3) CCP Revised 3/88

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18; my business address is: 3929 Malibu Vista Drive, Malibu, California 90265

On March 24, 2008, I served the foregoing documents described as **FIRST AMENDED COMPLAINT** on interested parties in this action

[X] by placing [ ] the original [ X ] a true copy thereof (enclosed in sealed envelopes, if applicable) addressed as follows:

CASEY YOURN
Deputy County Counsel
Kenneth Hahn Hall of Administration
500 West Temple Street Los Angeles, California 90012-2713

DEBORAH J. FOX
Meyers, Nave, Riback, Silver & Wilson
333 South Grand Avenue, Suite 1670
Los Angeles, California 90071

[ X ] BY E-MAIL (per stipulation)    [ ] BY FAX  [ ] BY PERSONAL DELIVERY

[ ] * I deposited such envelope in the mail at Malibu, California. The envelope was mailed with postage thereon fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

Executed on March 24, 2008 at Malibu, California.

[X ]  (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

NATASHA ROIT
Type or Print name                              Signature

073

1  ROBERT E. KALUNIAN, Acting County Counsel
2  RICHARD D. WEISS, Assistant County Counsel
   (SBN 89791), rweiss@counsel.lacounty.gov
3  CASEY C. YOURN, Deputy County Counsel
   (SBN 227966), cyourn@counsel.lacounty.gov
4  648 Kenneth Hahn Hall of Administration
   500 West Temple Street
5  Los Angeles, California 90012-2713
   Telephone: (213) 974-1840
6  Facsimile: (213) 687-7337

7  DEBORAH J. FOX, SBN 110929
   dfox@meyersnave.com
8  PHILIP A. SEYMOUR, SBN 116606
   pseymour@meyersnave.com
9  MEYERS, NAVE, RIBACK, SILVER & WILSON
   333 South Grand Avenue, Suite 1670
10 Los Angeles, California 90071
   Telephone: (213) 626-2906
11 Facsimile: (213) 626-0215

12
   Attorneys for Defendants,
13 COUNTY OF LOS ANGELES, *et al.*

14

15              UNITED STATES DISTRICT COURT

16       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

17 REBECCA A. RICKLEY,                    Case No. CV08-4918-SVW(AGRx)

18          Plaintiff,
                                          JUDGMENT PURSUANT TO
19                                        FRCP 68
        v.
20                                        Hon. Stephen V. Wilson
21 COUNTY OF LOS ANGELES, WILLIAM
22 HOWARD, KEVIN PETROWSKY,
   SOHEILA KALHOR, MICHAEL TRIPP,
23 RAJESH PATEL and DOES 2 THROUGH           J S - 6
24 20, INCLUSIVE,

25          Defendants.

26

27

28

1     Judgment is hereby entered in favor of plaintiff Rebecca Rickley ("Rickley")

2  pursuant to Rickley's Notice of Acceptance of Offer of Judgment dated April 24,

3  2009. Said Offer of Judgment was made by Defendants County of Los Angeles,

4  William Howard, Kevin Petrowsky, Soheila Kalhor, Michael Tripp and Rajesh Patel

5  (collectively "the County Defendants") on April 21, 2009, pursuant to Rule 68 of

6  the Federal Rules of Civil Procedure.

7     IT IS HEREBY ORDERED AND ADJUDGED:

8     The County Defendants do hereby jointly offer to allow entry of judgment in

9  favor of plaintiff Rebecca Rickley against the County Defendants in the sum of Fifty

10  Thousand Dollars ($50,000). Said offer excludes any costs or attorneys' fees which

11  shall be presented to the Court and the County Defendants reserve any and all rights

to contest plaintiff's entitlement to claim said fees and costs.

12     This Rule 68 offer does not constitute an admission of liability by or on

13  behalf of the County Defendants, and each of them who expressly deny liability for

14  any amount.

15     The County Defendants further hereby offer to stipulate that the Notices of

16  Violations dated March 28, 2007 and June 29, 2007 are hereby confirmed as

17  resolved and no further County action will be pursued as to either of these prior

18  Notices of Violation.

19  Dated: May 21, 2009

20     _____
        HONORABLE STEPHEN V. WILSON

21       UNITED STATES DISTRICT JUDGE

22

23  1228860.2
    1205.008

24

25

26

27

28

1