1  **LAW OFFICES OF NATASHA ROIT**
BY: NATASHA ROIT, SBN 125216
2  3929 MALIBU VISTA DRIVE
MALIBU, CALIFORNIA 90265
3  TELEPHONE:   (310) 657 7871
FACSIMILE:     (310) 657 3026
4  natasharoit@yahoo.com

5  Attorneys for Plaintiff, Rebecca A. Rickley

6

7

8  **UNITED STATES DISTRICT COURT OF CALIFORNIA**

9  **LOS ANGELES DIVISION**

10

11

12  REBECCA A. RICKLEY,                )   CASE NO.: 2:16-cv-04176-AB-AFM

         Plaintiff,               )   **SECOND AMENDED**
13                                        )   **COMPLAINT FOR VIOLATION OF**
                                          )   **FEDERAL CIVIL RIGHTS (42**
14     vs.                                )   **U.S.C. § 1983) AND**
                                          )   **PENDENT STATE LAW CLAIMS**
15                                        )
    COUNTY OF LOS ANGELES, a         )   **DEMAND FOR JURY TRIAL**
16  governmental agency;             )
    DEPARTMENT OF REGIONAL           )
17  PLANNING, an arm of the COUNTY   )
    OF LOS ANGELES; JOSHUA           )
18  HUNTINGTON, an individual and    )
    Principal Planner in the Zoning  )
19  Permits West Section of Department )
    of Regional Planning; RICHARD    )
20  BRUCKNER, an individual and      )
    Director of the Department of    )
21  Regional Planning; DEPARTMENT    )
    OF PUBLIC WORKS, an arm of the   )
22  COUNTY OF LOS ANGELES, ZAIM      )
    KHAYAT, an individual and        )
23  employee of the  Department of   )
    Public Works; RON DOCKERY, an    )
24  individual and employee of the   )
    Department of Public Works, and  )
25  DOES 1 through 10, inclusive;    )
                                          )
26         Defendants.               )
    _____   )
27

28

1

# I.

## JURISDICTION

1.  This is an action through 42 U.S.C. § 1983 against the County of Los Angeles and individual defendants employed by the County of Los Angeles.

2.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

3.  Plaintiff seeks injunctive relief and/or damages under the United States Constitution.  Plaintiff also includes herein related state law claims of which this Court has pendent jurisdiction.

4.  Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

5. This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the *Federal Rules of Civil Procedure*, and 28 U.S.C. §§ 2201 and 2202.

6.  An actual controversy exists between the parties.

# II.

## PARTIES

7.  Plaintiff, Rebecca A. Rickley (along with Natasha Roit), is a fee simple owner of a property at 3929 Malibu Vista Drive, Malibu, California.

8.  Plaintiff's property is located in an unincorporated area of Los Angeles County and is under the jurisdiction of Defendant, County of Los Angeles, including its Department of Regional Planning (hereinafter "DRP") and Department of Public Works ("DPW").

9.  Defendant, Josh Huntington ("Defendant Huntington"), was at all times pertinent hereto Principal Planner with the Zoning Permits West section of DRP.

10.  Defendant, Richard Bruckner ("Defendant Bruckner"), was, at all times pertinent hereto, Director of DRP.

2

11. Defendant, Zaim Khayat ("Defendant Khayat"), is, and, at all times pertinent to the allegations against him herein, was the District Engineer for the Calabasas Office of DPW.

12. The above-said Defendants shall hereinafter, at appropriate times, be referred to collectively as "the County Defendants".

13. Defendant, Ron Dockery, ("Defendant Dockery") is, and at all times pertinent to the allegations against him, was an inspector for the Calabasas Office of DPW.

14. The names and capacities of Doe Defendants 1 through 10, inclusive, are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names. Plaintiff will amend once these identities are properly ascertained and determined.

### III.

### ALLEGATIONS PERTINENT TO ALL CAUSES OF ACTION

### A. INTRODUCTION

15. This case involves repeated, continuous, and egregious retaliatory conduct by County of Los Angeles ("County") personnel, including its Departments of Regional Planning, Public Works, and even County Counsel, aimed at Plaintiff, who has been vocal, verbally and in writing, in her criticism of said Departments' actions and omissions, including in numerous correspondence to the County personnel and the Los Angeles County Board of Supervisors. Plaintiff's redress to and criticism of this government agency stemmed originally from the County's refusal to enforce County Codes against her adjacent neighbors, which neighbors were ultimately declared to be a public and private nuisance by Los Angeles County Superior Court, and continued when the County turned its eye to Plaintiff to harass, attempt to intimidate, and otherwise retaliate against her.

///

3

16.  As described in detail below, Plaintiff alleges that the actions described in this lawsuit as taken by Defendants, and each of them, were in retaliation for Plaintiff's exercise of her First Amendment rights, in violation of Plaintiff's due process and civil rights, and include, but are not limited to, the following categories:

• intentionally delaying and attempting to prevent an emergency project on Plaintiff's Property after she learned that her home (situated on a hillside over Pacific Coast Highway ("PCH")) was moving;

• designating her home as an environmentally sensitive habitat when the County Defendants knew that no such habitat existed on or applied to Plaintiff's Property;

• designating Plaintiff's Property as within 50 feet of the Coastal Bluff, with the concomitant limitations on use and ability to repair/remediate, when such a designation was geographically, topographically, and gravitationally impossible;

• designating Plaintiff's Property within the Coastal Bluff when her property did not fit the County definition;

• approving and signing off on an activation, without Plaintiff's knowledge, of a sewer line from the gas station on PCH uphill through Plaintiff's property, when County Defendants in general and Defendant Dockery in particular, knew that said sewer line was not connected to the County sewer and would spill and did spill sewage onto Plaintiff's Property;

• accusing Plaintiff in public documents and private documents forwarded to third parties, of illegal, un-permitted, and dangerous activities on an adjacent property at 18460 Coastline Drive, Malibu (hereinafter "Yang/Yazdani Property") in her role as Court Appointed Supervisor of Remediation ("Remediation Supervisor") on that property, when County Defendants knew that Plaintiff concluded that role 3 years prior to the creation of conditions which formed the basis of said accusations;

4

1        •     tampering with and removing documents from the Yang/Yazdani Property file, such as permits, authorizations, and As-Built plans relating to the work Plaintiff supervised in 2013, in an attempt to support false accusations against her, *i.e*., that she performed illegal work, and to create a sham record;

•     refusing to withdraw such demonstrably and knowingly false accusations even after being provided anew with claimed missing documentation that Plaintiff had kept; and

•     refusing to withdraw or modify such demonstrably and knowingly false accusations even after being provided with Court Orders and other publically available documents to which the County Defendants had access, and which definitively demonstrated that the illegal and/or dangerous conditions on the Yang/Yazdani Property either pre-existed Plaintiff's role as Remediation Supervisor or were installed after she had resigned.

17.  Among other claims below, Plaintiff alleges that Defendants' conduct as described in this lawsuit was in direct retaliation for Plaintiff's exercise of First Amendment rights, in violation of Plaintiff's due process, and additionally discriminatory against her as an openly gay woman and thus a member of a suspect class.

18.  This is not the first and only compilation of conduct by the County Defendants against the Plaintiff.  As described in detail in Section G(1) below, Plaintiff has been, for years, exposed to discriminatory conduct by the County, which had resulted in the County paying Plaintiff in a prior 42 U.S.C § 1983 action, *Rickley v. County of Los Angeles, et al.*, Case No. 2:08-cv-04918, along with an attorney fee award to Plaintiff as the prevailing party ("Prior Litigation").

19.  The categories of County conduct which were the subject of Prior Litigation included, without limitation:

•     citing Plaintiff for work on her property which did not require permits, with one such County employee stating "The code requires what I say it requires";

5

- tampering with Plaintiff's Property file by destroying completed plan check documents to force Plaintiff to start the process anew; and

- unlawful entry (in violation of the Fourth Amendment) into Plaintiff's Property through closed and latched doubled doors (as caught on security camera), photographing the interior and then admittedly destroying those photographs when caught, etc.

20. On information and belief, upon conclusion of the Prior Litigation where Plaintiff was determined to be the prevailing party, the County personnel involved in that conduct were not fired or reprimanded, but promoted.

**B. PLAINTIFF'S PROPERTY AND MATTERS LEADING TO THE INSTANT DISPUTE**

21. Plaintiff has owned and resided on Plaintiff's Property for 20½ years. The property consists of two legal lots: the upper lot on which the house is sited, Assessor's I.D. Number 4443-003-012 (hereinafter "Lot 12"), and the lower lot, Assessor's I.D. Number 4443-003-011 (hereinafter "Lot 11"). Both lots, where appropriate, will be referred to hereinafter as "Plaintiff's Property" and, where appropriate, separately as Lot 12 and Lot 11. Each legal lot is taxed separately.

22. Plaintiff's Property is sited on a hill over PCH. The hillside was previously well known for its landslide issues and has been the subject of an expensive, multi-million dollar repair by the federal government and the State of California to protect the traveling public on PCH and Topanga Canyon Boulevard, including construction of a multi-tiered waler wall (retaining wall tied into bedrock with steel drilled into the hillside) and the hydraugers (underground drains), which are easily observable when driving on PCH. Ultimately, the project performed by the federal and state governments had a superior stabilizing effect on the hillside which enjoyed a factor of safety greater than any other similarly located hillside.

///

///

**SECOND AMENDED COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS**

23.  However, due to illegal conduct of Plaintiff's adjoining neighbors on the Yang/Yazdani Property (which resulted in contempt proceedings and a judgment against them), in or about January 2016, Plaintiff began noticing signs of movement in her house and on Lot 12, and commissioned an updated topographic comparison.  (Prior topographic comparisons had confirmed movement on the Yang/Yazdani Property).  That comparison, dated February 8, 2016, found that movement had migrated from the Yang/Yazdani Property onto Lot 12.  Geotechnical evaluation performed thereafter additionally found this migrated movement/creep.

24.  Within days of learning that her property was experiencing movement, Plaintiff applied to the County for permits to install a 23 pile retaining system (later increased to 24 piles) ("Remedial Project").

25.  Plaintiff passed the geotechnical and Building and Safety requirements for the Remedial Project, and was ready to begin the work.  But before Plaintiff could proceed, the County advised her that her property had been re-zoned as an environmental habitat, and she could not proceed.[1]  The County further demanded that Plaintiff pay the County upwards of $10,000 before she would be advised whether she could do anything with her property in view of this re-zoning.

26.  More specifically, Plaintiff was advised by the County, in writing, without limitation:

(a) that Plaintiff's Property had been designated/zoned by the County within the "H1 zone" and, additionally, within 200 feet of the "H1 zone" (hereinafter "the H1 zoning designation"), without any substantial biological

---

[1]  In 2014, the County, by way of its agreement with the California Coastal Commission ("CCC") took over the regulatory authority under the *California Coastal Act* from the CCC under the Land Use Plan ("LUP") with implementation under the provisions of the Santa Monica Mountains Local Implementation Plan ("LIP").  As a result, while these "coastal" matters were previously handled by the CCC, the County was now in charge.

**SECOND AMENDED COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS**

review or any substantiation by the County;

(b) that Plaintiff's Property was designated/zoned within the "Coastal Bluff", that Lot 12 was within 50 feet of the Coastal Bluff, and that Lot 11 was all but consumed by the Coastal Bluff (hereinafter "the Coastal Bluff zoning designations");

(c) that the zoning designations referenced in (a) and (b) hereinabove (hereinafter, where appropriate, jointly referred to as the "zoning designations") constituted final decisions by the County; and

(d) that in order to even know what, if anything, Plaintiff can do to protect her property and/or do any remedial work, including saving her property from sliding, Plaintiff had to pay over $10,000 in a nonrefundable fee.

27.  Due to Plaintiff's history with the County, and thus with trepidation, Plaintiff nonetheless engaged with County Defendants in an attempt to proceed legally with the Remedial Project as it was necessary to protect her property.

**C.  THE H1 ZONING DESIGNATION**

28.  According to the LIP, the H1 category "*consists of habitats of highest biological significance, rarity, and sensitivity – alluvial scrub, coastal bluff scrub, dunes, wetland, native grassland and scrub with a strong component of native grasses or forbs, riparian, native oak, sycamore, walnut and bay woodlands, and rock outcrop habitat types.*"  LIP § 22.44.1810(A).

29.  Learning, for the first time, of the H1 zoning designation, and knowing that her property had none of the biological resources which define the H1 category, Plaintiff demanded documentation from the County Defendants. Finally, Defendant Huntington produced a map which he admitted was created by his Department (DRP) ("the H1 map").  A true and correct copy of the H1 map is attached hereto as Exhibit "A".  The purported H1 areas are shown in green.

30.  At no time prior to this re-zoning of her property as this purported environmentally sensitive habitat, was Plaintiff served with notice that her

8

property was being so zoned.  Indeed, during the time that the CCC was the responsible agency rather than the County (see n.1 above), Plaintiff had previously received Coastal exemptions and permits, and the CCC never indicated that either Lot 11 or Lot 12 was H1 or within 200 feet of H1.

31.  Prior to re-zoning Plaintiff's Property, the County Defendants, and each of them, were amply aware -- having seen Plaintiff's Property numerous times, having been provided with site specific photos, and as is visible from aerial photographs and Google Earth -- that Plaintiff's Property was planted and has consistently been planted with ice plant with a few palm trees, and not an H1 zone.  Notwithstanding indisputable knowledge that Plaintiff's Property did not and could not contain H1 biological resources, DRP generally, and Defendants Huntington and Bruckner in particular, so unlawfully zoned Plaintiff's Property.

32.  On May 2, 2016, in an email to Defendant Huntington, Plaintiff's counsel requested that Defendant Huntington provide any documentation that lead to the H1 zoning designation.  In emails dated May 2, 2016 and May 3, 2016, Defendant Huntington was unable to provide any such documentation, stating nonetheless that this was a final decision of DRP and the County.  He also stated that, if Plaintiff had any contrary evidence, the Environmental Review Board ("ERB") would consider it, which representation, as alleged hereinbelow, was untrue, and, based on information and belief, was intended to continue to give Plaintiff the retaliatory runaround and charge her inappropriate and unrefundable fees.  Additionally, Defendant Huntington intentionally misrepresented the project in correspondence with the CCC so as to cause the CCC to issue an opinion letter based on false representations in order to additionally support the County Defendants' position that its decisions were final.

33.  On May 4, 2016, Plaintiff requested and attended a meeting at the offices of County Supervisor, Sheila Kuehl ("Supervisor Meeting No. 1").  Attendees included Defendants Huntington and Bruckner, as well as County

SECOND AMENDED COMPLAINT
FOR VIOLATION OF FEDERAL CIVIL
RIGHTS (42 U.S.C. § 1983) AND
PENDENT STATE LAW CLAIMS

Counsel, Carole Suzuki and Joe Nicchitta.  During that meeting, Plaintiff presented reports from her retained professionals, who had been on Plaintiff's Property numerous times, and who were intimately familiar with Plaintiff's as well as adjoining properties, having performed extensive work on each.  Both reports stated definitively that there were no H1 growths on Plaintiff's Property, but only ice plant and a few palm trees.  The County Defendants were also presented with photographs and other demonstrative evidence.

34.  The report from David Woolley, surveyor, stated in pertinent part:

*I was provided with the "H1" mapping prepared by the County ("County H1 Map")... [I]t is my understanding that the County H1 Map is intended to reflect a protected habitat.  I have worked on the Subject Property for at least ten (10) years), and, in that time, the lower lot [Lot 11] has always been landscaped with ice plant and a few palm trees \*\*\* Therefore, it is my opinion, that the County H1 Map is inaccurate and does not reflect the conditions on the ground in the past or in the present.*

The report from Quang Tran, Civil Engineer, contained the same conclusions.

35.  The Woolley and Tran reports shall hereinafter be jointly referred to as "Professional Reports, Round 1".   Neither the County Defendants nor any other attendees of Supervisor Meeting No. 1 disputed any of the statements in the Professional Reports, Round 1.

36.  Nor was Plaintiff's Property within 200 feet of an H1 zone based on the County's own previous determinations that those areas, rather than containing any H1 biological resources, were covered by the Storm Water Pollution Control Plan ("SWPCP") measures, *e.g.*, visqueen, jute net, sandbags, and silt fencing, etc.  The Professional Reports, Round 1, submitted at Supervisor Meeting No. 1, also stated that Plaintiff's Property was not within 200 feet of an H1 zone.

37.  At the conclusion of Supervisor Meeting No. 1, Plaintiff was advised that her evidence would be "reviewed" and that she would be advised whether the

10

**SECOND AMENDED COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS**

1  County's final decisions would be modified.

2  38.  On May 17, 2016, Plaintiff attended Supervisor Meeting No. 2.  When

3  she appeared at that meeting, she was handed a printed copy of an email from

4  County Counsel, Carole Suzuki, generated 18 minutes before the meeting was

5  scheduled to begin.  The email stated that, upon review of Plaintiff's information

6  submitted at Supervisor Meeting No. 1, DRP declined to change its

7  determinations.  At the Supervisor Meeting No. 2, Plaintiff was again advised that

8  these zoning determinations were final.

9  39.  On June 17, 2016, Plaintiff submitted to County Defendants a

10  professional report from Environmental Intelligence, LLC, which company

11  performed yet another assessment pertaining to the H1 zoning designation, and,

12  again, confirmed that the H1 zoning was wrong.  The report concluded:

13  *Environmental Intelligence conducted a biological assessment of the*

14  *Rickley Residence, located at 3929 Malibu Vista Drive, City of Malibu, Los*

15  *Angeles County California on June 10, 2016. The assessment included a*

16  *systematic investigation of all onsite habitats for rare or special status*

17  *resources. No native habitats were observed on-site. No special status*

18  *resources were observed. The proposed Project meets the Permitted Use*

19  *requirements of both the H1 buffer and quiet zone described in Section*

20  *22.44.1890 (D) and (E) of the Santa Monica Mountains Local Coastal*

21  *Program Draft Local Implementation Program. No impacts to biological*

22  *resources are expected.*

23  The Environmental Intelligence report will hereinafter be referred to as

24  Professional Report, Round 2.

25  40.  Plaintiff also paid to the County, albeit under protest, the

26  nonrefundable $10,000 fee.

27  41.  Despite the above, the County Defendants had refused, and until after

28  the filing and prosecution of the instant litigation, continued to refuse to change

11

**SECOND AMENDED COMPLAINT
FOR VIOLATION OF FEDERAL CIVIL
RIGHTS (42 U.S.C. § 1983) AND
PENDENT STATE LAW CLAIMS**

1  the H1 designation or even to process Plaintiff's Remedial Project authorizations.

2  Indeed, as reflected in Exhibit "B" hereto, the County Defendants had cancelled 4

3  ERB hearings (May 23, June 20, July 18, and September 19, 2016) after

4  receiving Plaintiff's H1 documentation – purportedly for lack of agenda items –

5  rather than hear Plaintiff's application.  At the August 2016 hearing, the County

6  Defendants placed two matters on the ERB calendar, both involving equestrian

7  properties in Malibu, but not Plaintiff's Application which had been completed and

8  ready to proceed.

9      42.  Thus, on the one hand, the County Defendants insisted that

10  authorizations would not be given to Plaintiff without ERB review or payment of a

11  fee, but then refused to proceed with this review having collected the payment.

12      43.  Plaintiff further alleges as follows:

13          a) The Remedial Project could only proceed during what is known as

14  the "dry season" – April 1 to October 31 – based on County's own regulations.

15  Plaintiff alleges on information and belief that the County Defendants knowingly

16  and intentionally refused to place the ERB review on calendar 5 times from May

17  through September, as an October hearing (for which the ERB hearing was finally

18  set) was too late for Plaintiff to perform the Remedial Project during the 2016 dry

19  season, thus delaying the project by a year.

20          b) Building and Safety permits, including geotechnical reports, are

21  valid for 6 months.  Plaintiff alleges on information and belief that the County

22  Defendants knowingly and intentionally delayed the ERB hearing, and had

23  refused and continued to refuse to process the Coastal Development Permit

24  ("CDP"), so as to cause Plaintiff's permits to expire and to cause her to start

25  anew, pay additional nonrefundable fees, and to harm her property.

26          c) On June 20, 2016, County Counsel, Joseph Nicchitta,

27  acknowledged in an email to Plaintiff's counsel that Defendant Huntington had

28  received Plaintiff's "Biological Assessment".  Yet, County Defendants caused the

SECOND AMENDED COMPLAINT
FOR VIOLATION OF FEDERAL CIVIL
RIGHTS (42 U.S.C. § 1983) AND
PENDENT STATE LAW CLAIMS

ERB docket to reflect lack of receipt of this biological assessment, claiming instead that there were only letters in place of a "bio report", and omitting both in the description and in the attachments the Professional Report, Round 2.

d) County Defendants in general, and Defendant Huntington in particular, misrepresented and expanded the nature of the Remedial Project not only in the ERB documentation, but in presenting the project to the CCC in an effort to enlarge, re-categorize, delay, and refuse to authorize, as well as increase expenses associated with the project, including without limitation that the project involved 200 cu. yds. of grading (which amount carried with it significant permitting requirements) when, at the time of making this representation, said Defendants knew that the project involved fewer than 50 cu. yds (the cutoff for said permitting requirements).

44.  On October 17, 2017, during the pendency and prosecution of this litigation, DRP finally held an ERB hearing.  During that hearing, an ERB Board member from the Los Angeles County Fire Department stated on the record that he was personally familiar with the subject properties (Plaintiff's and Yang/Yazdani) and knew that, for at least 10 years, those properties were not H1, thus confirming that County Defendants herein had designated, continued to designate, and refused to de-designate Plaintiff's Property as H1, despite knowledge of the contrary, in retaliation against Plaintiff and in violation of her civil rights.

45.  To date, and despite the ERB voting to remove the H1 designation, the County Defendants have not processed the permanent removal of the H1 designation from Plaintiff's Property, and Plaintiff alleges on information and belief, that, without a Court Order, will not do so, will continue to hold this false designation over Plaintiff and Plaintiff's Property, impacting her property, her title, and her ability to use and repair/remediate her property.

///

13

**D.  COASTAL BLUFF - LOT 11 (LOWER LOT OF PLAINTIFF'S PROPERTY)**

46.  "Bluff" is defined in the LIP as a "*high bank or bold headland with a broad, precipitous, sometimes rounded cliff face overlooking a plain or a body of water with at least 10 feet of vertical relief.*"  "Bluff edge" is defined in the LIP as follows: "*For coastal and canyon buffs, the bluff edge shall be defined as the upper termination of a bluff, cliff, or sea cliff.*"  "Coastal Bluff" is defined in the LIP as a bluff "*whose toe is now or was historically (within the last 200 years) subject to marine erosion*".

47.  In addition to the H1 zoning designation, the County Defendants designated Lot 11 to be beyond the Coastal Bluff edge. For Lot 11 – a gentle descending slope and a legally buildable and separately taxed lot – to be beyond the bluff edge is a physical impossibility and defies both gravity and the LIP definitions.

48.  A copy of the County's "Coastal Bluff" designation map is attached hereto as Exhibit "C" ("the County's Coastal Bluff map"), and clearly demonstrates that there is no drop off point, no sharp decline, and no bluff edge. The County Coastal Bluff map represents an arbitrary "top of bluff" designation on Plaintiff's Property, which the County Defendants knew then and know now is inconsistent with the conditions on the ground and intentionally inconsistent with the requirement that the County make these determinations location specific.

49.  Just as for the H1 zoning designation, even though the falsity of that designation was known and obvious, Plaintiff had commissioned a topographic study to map the bluff edge and topography, and presented the County Defendants and other attendees with proof at Supervisor Meeting No. 1, including said study and photographs, that Lot 11 is not on the Coastal Bluff, and that it is literally physically impossible for it to be.  Despite irrefutable evidence to the contrary and their own knowledge of contrary conditions on Plaintiff's Property, the County Defendants had refused to withdraw the Coastal Bluff zoning

14

designation of Plaintiff's Property, advising Plaintiff that this zoning designation was final.[2]

**E.  COASTAL BLUFF – LOT 12 (UPPER LOT OF PLAINTIFF'S PROPERTY) AND THE REMEDIAL PROJECT**

50.  LIP Section 22.44.820(3)(a) exempts from Coastal Development Permit ("CDP") requirement *"repair or maintenance activities that do not result in an addition to, or enlargement or expansion of, the object of those repair or maintenance activities*."

51.  LUP and LIP policies must be consistent with Coastal Act's mandate that no CDP "shall be required" for "[r]epair or maintenance activities that do not result in an addition to, or enlargement or expansion of, the object of those repair or maintenance activities."  *Pub. Res. Code* § 30610(d)

52.  The Remedial Project fell squarely within said exemption.  The Remedial Project did not result in an addition or enlargement or expansion of the "object" of the repair, to wit, the house proper and Lot 12 which are subject to creep/movement.

53.  The County Defendants, notwithstanding multiple requests from Plaintiff, could not articulate why they did not exempt Plaintiff's Remedial Project from the requirement of obtaining a CDP other than to say that the project is "big".  Plaintiff alleges on information and belief that the County Defendants' demand for the CDP, when one was not required, was likewise in retaliation for Plaintiff's exercise of her First Amendment Rights and in violation of her due process.

///

---

[2]  Notably, the County's Plaintiff's Property file contained documentation from another property within the same tract (which documentation Plaintiff had not seen before this particular dispute), that neither Plaintiff's Property nor the hillside on which it and other properties are sited are located on a "Coastal Bluff", because the hillside does not adjoin the ocean, as a road exists between this slope and Pacific Ocean (i.e., PCH), and because it is not and has not been impacted by marine erosion for 200 years.

**SECOND AMENDED COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS**

54. Plaintiff further alleges on information and belief that the County Defendants' additional motivation for requiring the CDP of Plaintiff was to increase the tax basis for Plaintiff's property taxes, which the County would otherwise be unable to do due to what is commonly known as Proposition 13. By requiring the CDP and rejecting, without justification and in an abuse of discretion (if any such discretion existed in the first place) the exemption based on "repair" into which category the Remedial Project clearly falls, the County Defendants' intent is to reassess Plaintiff's Property to impose upon her an additional tax burden as further retaliation.

**F. APPROVING AN UNCONNECTED SEWER LINE FROM A GAS STATION THROUGH PLAINTIFF'S PROPERTY, KNOWING IT WILL SPEW SEWAGE ONTO PLAINTIFF'S PROPERTY**

55. One of the County personnel involved in the acts which were the subject of Prior Litigation was Defendant Dockery. Defendant Dockery was personally familiar with Plaintiff, with her complaints, and with Prior Litigation.

56. On the corner of PCH and Topanga Canyon sits a gas station, which had been closed for many years, but reopened in 2016. Defendant Dockery was the County inspector for that reopening.

57. Plaintiff alleges on information and belief that Defendant Dockery, as the County inspector knew that the gas station intended to pump sewage from the gas station through a sewer line traversing uphill underground on Plaintiff's Property. Plaintiff further alleges on information and belief that Defendant Dockery knew and, in performing his inspection, must have known, that the sewer line was not connected to the County sewer and, as such, when in use, would spew sewage into Plaintiff's back yard.

58. On or about October 12, 2016, Plaintiff discovered this sewage spill and discovered that the sewer line emanated from the gas station below. In conducting research and investigation of the spill, Plaintiff discovered that it was

**SECOND AMENDED COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS**

Defendant Dockery who signed off on this sewer line when he, on information and belief, knew that it did not connect to any sewer, that it went through Plaintiff's Property, and that it would spill sewage on Plaintiff's Property.

59.  Plaintiff alleges on information and belief, that said actions by Defendant Dockery were in retaliation from Plaintiff's exercise of her First Amendment rights, in violation of her due process rights, and in violation of her civil rights, including rights stemming from her being a member of a suspect class.  Further, as evidence will show in discovery and in trial, this is not the first time that Defendant Dockery conducted himself in a manner showing open disdain for Plaintiff in violation of her civil rights, and supporting a reasonable inference of motive and intent in knowingly creating circumstances allowing the spill of sewage onto Plaintiff's Property.

**G.  CREATION OF A SHAM RECORD CONTAINING FALSE ALLEGATIONS OF ILLEGAL CONDUCT BY PLAINTIFF IN HER ROLE AS A COURT APPOINTED SUPERVISOR OF REMEDIATION ON ADJOINING PROPERTY**

**1.  BACKGROUND**

60.  This subsection is included for background as well as to establish motive and to put Plaintiff's allegations in this lawsuit generally, and in this Section G in particular, in context.

61.  Plaintiff hereby refers to and incorporates herein Exhibit D – the First Amended Complaint in the Prior Litigation, which describes the extensive history of Plaintiff's complaints against the County, and the County's discriminatory treatment of Plaintiff.

62.  In summary:

a) With respect to Plaintiff's neighbor to the North, at 3925 Malibu Vista Drive, Malibu, California owned then by Marvin and Tina Goodfriend and subsequently sold to and currently owned by Ocean View Capital, LLC:

///

17

i) The Goodfriends performed an unpermitted million dollar remodel and dumped in excess of 300 cubic yards or more than 50 roll off containers of construction debris onto the hillside above PCH (where the County now claims a Coastal Bluff), and into a large land fissure.  The illegal dumping was reported to the County multiple times by laborers witnessing the dumping, who provided their names and contact information.  Faced with the County's utter refusal to respond or handle this creation of a dumping site, Plaintiff had to litigate, prevailing and obtaining injunctive relief and damages, with findings by the Los Angeles Superior Court of intentional conduct by the Goodfriend neighbor(s) as well as contempt findings with jail time.  The corrective measures/remediations on that property were ultimately performed under the supervision of Plaintiff when she (along with Ms. Roit) was appointed by two Superior Court Judges to supervise these remediations when the Goodfriends refused to comply and the County refused to enforce the Code which protects the citizenry, including Plaintiff, due to personal animus against Plaintiff.  To date, despite Superior Court findings and judgments as well as violation citations by the California Coastal Commission ("CCC") and the Air Quality Management District ("AQMD") due to the finding of asbestos in the dumped trash, the County never issued citations for those dumping violations.

ii) After Ocean View Capital, LLC ("OVC") became the owner of that property, the County allowed OVC to perform construction work with expired permits, without geotechnical reports, in violation of the LIP requirements for Hazard Zones, and without requiring a CDP or dealing with any environmentally sensitive zoning designations.

b) With respect to Plaintiff's neighbors to the South, the property at 18460 Coastline Drive, Malibu, California owned by Jun Ho Yang and Ho Soon Hwang Yang, and previously by Shahriar and Kathy Yazdani ("Yang/Yazdani Property"):
///

**SECOND AMENDED COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i)  The Yang/Yazdani Property has been the subject of multiple significant illegal projects without permits, including grading, discarding "unnecessary" dirt over the cliff face, uncompacted uncertified fill, no drainage, illegal backyard pad extension, illegal retaining structures, illegal additions and other illegal activities.

ii) The Yazdanis had added to the square footage without permits, had hired a man on a first name basis only – no company and no training -- renting two Bobcats, laid out water hoses as guides for hillside cuts, and began cutting and terracing the hillside with any "extraneous material" shoved over the toe of the hill above PCH onto and over the waler wall built and paid for by the state and federal governments.  Any aerial photos or Google Earth depicting this wall show the wall plainly visible until it is directly under the Yang/Yazdani Property where it is completely covered by dirt, reappearing the next house over.

iii) Plaintiff had notified the County Department of Public Works ("DPW") of this illegal and dangerous project while it was occurring. DPW, extremely familiar with the landslide issues on this hillside and these particular properties, initially refused to respond to this report of illegal activities at all or investigate because Plaintiff was the person making the complaint and seeking protection of her property under the Building Code.  After Plaintiff continued to escalate the issue, the County sent out an employee who represented herself and whom the County represented to be an engineer but who had no such licensing.  The employee had never been on the Yang/Yazdani Property, ignored the unpermitted house addition built in direct contravention to the Slide Waiver[3], ignored the unpermitted extension of the upper pad on which she was actually standing, and ignored illegal grading.  Instead, standing on the unpermitted upper pad extension of the Yang/Yazdani Property looking down on to the graded area,

---

[3] "Slide Waiver" is a recorded acknowledgment and requirement that no construction take place which adds to the square footage of the house due to the landslide issues caused by the added driving force to the hillside.

19

1  she determined there was only weed clearance, completely disregarding the

2  contour changes between this and adjoining properties, the visible removal of

3  Plaintiff's lateral support, and structural fence failure where no such failure

4  existed on the opposite property line or even at the toe of the hill where

5  movement susceptibility would have been more prevalent, and also completely

6  disregarding the house and pad additions which, under no theory, could have

7  been categorized as "weed clearance."

8          iv)  The Yazdanis had also extended the flat upper rear pad of their

9  property adjacent to the house, placing railroad ties 10'-15' high or more,

10  backfilled to them with uncompacted uncertified fill, and then similarly installed

11  earth and railroad tie platform stairs down to the lower lot with additional cut and

12  fill – a clearly illegal operation.  Concerned for her home and the hillside, Plaintiff

13  again advised the County, which again refused to respond to this particular

14  citizen's complaints even in the face of aerial photographs coincidentally taken by

15  Cal Trans while this was occurring, thus allowing not only an illegal retaining

16  structure, but improper and illegal fill causing water infiltration into the hillside in a

17  historical landslide area.

18          v)  Additionally without permits, the Yazdanis began jack hammering

19  and demolishing the pool, which they filled with debris from their illegal

20  unpermitted full house remodel.[4]  The County's DPW, once again, intentionally

21  ignored Plaintiff's complaints and photographic proof.  When the Court, in a

22  matter brought by Plaintiff, ordered the Yazdanis to cease the multi-year illegal

23  construction, obtain permits, comply with Code, and turn off all utilities until the

24  house could be deemed safe, the Yazdanis were unable to build a new illegal

25  pool as intended on the lower lot, and decided to maintain the demolished pool

26  despite the fact that the structural integrity of that pool had been grossly

27

28
_____

[4]  The entire upper pad on all four sides of the house also had debris feet
deep covering so thoroughly so as to obscure any view of the soil.

20

**SECOND AMENDED COMPLAINT
FOR VIOLATION OF FEDERAL CIVIL
RIGHTS (42 U.S.C. § 1983) AND
PENDENT STATE LAW CLAIMS**

1    compromised if not destroyed. To assist the violators, rather than cite them, the

2    County's DPW took the position that the pool was simply being "re-plastered" and

3    issued a re-plastering permit.  Not surprisingly, that pool was demonstrated to

4    leak, further exacerbating water infiltration – the number 1 cause of landslides.

5          vi)  The County's DPW also allowed the pool equipment on the

6    Yang/Yazdani Property not only to be moved from its permitted spot, but placed

7    within feet of the property line with Plaintiff's Property in an underground "vault"

8    cobbled together out of various discarded construction materials.  That equipment

9    included a gas heater with the concomitant danger of explosion from trapped gas

10   fumes and/or the walls of the unreinforced unpermitted vault collapsing.

11         vii)  As a result of the historic violations untended to by DPW, and

12   despite the danger to Plaintiff's home, the Cal Trans' waler wall, PCH, and the

13   traveling public, the movement on the Yang/Yazdani Property became apparent.

14   DPW was provided with documentation in the form, without limitation, of

15   topographical comparisons delineating movement, and requested that County

16   Codes be enforced on that property, lest that movement migrate to Plaintiff's

17   Property and house proper.  Once again, DPW refused to consider multiple

18   studies delineating movement because it was submitted to them by Plaintiff.

19   Indeed, County Counsel, Carole Suzuki, threatened the license of Plaintiff's

20   surveyor who performed the topographical study even though he had complied

21   with all of his professional obligations, as confirmed by the surveyors licensing

22   Board, to which he himself submitted these fallacious claims against him for a

23   prompt and definitive determination.

24         viii)  That movement did migrate off site to Plaintiff's Property and

25   home, as confirmed in the February 8, 2016 topographical report demonstrating

26   that structures were now moving up to 4 inches – an alarming rate by any

27   calculation.

28   ///

21

c) While conducting themselves in the above-said fashion with Plaintiff's neighbors, the County and the individual defendants, without limitation:

i) harassed Plaintiff and her contractors,

ii) delayed and issued stop notices and Notices of Violation for Plaintiff's minor home improvement projects, e.g, roofing, stucco (some of which did not even require permits),

iii) tampered with Plaintiff's Property file by, without limitation, removing approved plans, claiming that none existed, only to be confronted with the same in depositions, and

iv) entered Plaintiff's Property through a closed gate in violation of her Fourth Amendment rights, and photographed the interior of her home only to intentionally and admittedly destroy those photographs once learning that they were caught on a security camera.

**2.  EVENTS LEADING TO AND CREATION OF A SHAM RECORD BY THE COUNTY DEFENDANTS**

63.  On February 23, 2006, the Honorable Judge Cesar Sarmiento of the Los Angeles Superior Court issued a Judgment against Shahriar Yazdani, Plaintiff's adjacent neighbor for, among other things, nuisance and contempt, ordering abatement of the nuisance (Los Angeles Superior Court Case No. SC081696). When Yazdani refused to abate, Plaintiff filed a new action seeking additional orders and compensation for continuing nuisance (Los Angeles Superior Court Case No. SC091775) pursuant to California law on nuisance which requires subsequent actions to be filed to obtain further relief.  *Renz v. 33rd District Agricultural Assoc.* (1995) 39 Cal.App.4th 61

64.  Subsequent to that Judgment and notwithstanding the same, in 2007 Yazdani performed an illegal grading operation on the lower lot of his property. He hired a Bobcat operator named Rick whose last name he did not know and, without permits, geotechnical studies, licensed contractors, or any other

SECOND AMENDED COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS

necessities for such an operation in a landslide-prone area, graded about 300 cubic yards (confirmed by a comparison of topographical studies before and after the grading) and impacting Plaintiff's lateral support. The grading left the hillside uncompacted and vulnerable to water infiltration in a landslide area.

65.  On November 9, 2007, the California Coastal Commission ("CCC") issued a Notice of Violation ("NOV") against the Yazdani property for an illegal extensive grading project without permits.  The NOV contained the following findings, without limitation:

"Our staff has confirmed that unpermitted development has occurred on your property located at 18460 Coastline Drive, in Los Angeles County (Assessor's parcel number 4443-003-013) which is located within the Coastal Zone. The unpermitted development includes, and may not be limited to, removal of major vegetation, grading and landform alteration with mechanized equipment on a coastal bluff.

The unpermitted development described above is located on a steep coastal bluff-top slope in a confirmed active landslide area, which is failing due to the presence of an existing landslide.  Grading and removal of major vegetation on your property may further destabilize the bluff."

66.  The NOV ordered, without limitation: that an Erosion Control Plan be prepared by a licensed civil engineer, soils engineer, erosion control specialist, or functional equivalent be immediately submitted, that temporary erosion control measures, utilizing appropriate Best Management Practices ("BMP"), based on said plan to stabilize all graded and denuded areas be implemented, and that a complete coastal development permit application be submitted.

67.  On December 8, 2008, Judge Sarmiento granted a Preliminary Injunction ordering Yazdani to comply with this NOV.  Yazdani did not.

///

///

23

68.  On February 10, 2011, Judge Sarmiento issued his Decision Following Bifurcated Bench Trial, finding in favor of Plaintiffs on all claims, including for Violation of the Coastal Act.  The Yazdanis did not pay any of the fines or fees imposed upon them and still failed to comply with any of the Court Orders.

69.  On November 16, 2011, the Yangs became the new owners of that property.  They took possession admittedly aware of the NOV.  In his deposition, Mr. Yang provided the following window into his thought process:

> Q:  Is it your intention to do anything else with respect – on your property with respect to the Coastal Commission?

> A:  No.

70.  As addressed above, the County DPW was repeatedly advised and amply aware of these extensive illegal and unpermitted operations on the Yang/Yazdani property.  Plaintiff had advised DPW of these operations while they were ongoing, forwarded to them photographs, topographic studies confirming the operations, the CCC NOV, etc., but DPW had refused to take any steps to assist Plaintiff, to issue citations, to stop the illegal operations, or even to properly evaluate Plaintiff's complaints and documents.  Plaintiff continued to redress the County, to complain publically about their actions and inactions, to generate emails, letters, etc. regarding the same.

71.  On April 11, 2013, after numerous hearings and various representations by the Yangs of future compliance which never came to pass, Superior Court issued a Preliminary Injunction ordering the Yangs to cure the NOV, to submit an application to the CCC within 10 days, and immediately submit an Erosion Control Plan (*aka* SWPCP).  The Yangs did nothing.

72.  On July 2, 2013, after numerous additional hearings and more representations by the Yangs of future compliance which still never came to pass, and when the Yangs demonstrated continued intention not to comply, Superior Court appointed a Receiver.

24

**SECOND AMENDED COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS**

73.  On August 29, 2013, Superior Court appointed Plaintiff herein (and Natasha Roit) as Remediation Supervisor of the remediation on the Yang/Yazdani Property ("Remediation Supervisor"), along with an appointment of specific professionals.  This was the second time the Court trusted and appointed Plaintiff as Remediation Supervisor on a neighboring property after she performed flawlessly as Remediation Supervisor on the other adjoining property (Goodfriend), after years of noncompliance by that neighbor, as well with years of inaction by the County to stop egregious illegal activities by Goodfriend.

74.  Facing the rainy season and the multi-year delay by the Yangs, Plaintiff, along with the other appointed individuals, immediately began the process of Phase 1 of the work on the Yang/Yazdani Property – installing Storm Water Pollution Control Plan ("SWPCP") measures to control water flow and infiltration into the hillside – necessary due to the emergency movement situation on that property, as confirmed by geotechnical and topographical exploration, studies, and reports.

75.  To that end, in September 2013, an Emergency Permit was obtained from the CCC, and an authorization to proceed was obtained from the County engineer assigned to this project, Mitch Miller, to proceed with the installation of the engineered SWPCP.  The process of obtaining these authorizations was documented in emails with Mr. Miller (with copies to another County engineer, Hassan Alameddine) and Denise Venegas of the CCC.  For instance:

--      On 9/10/13 Mr. Miller generated an email, with a copy to Mr. Alameddine, confirming that the "*attached Erosion Control Plan complies with County requirements*". That email was forwarded on that same day to Ms. Venegas.

--      On 9/17/13, in an email, Ms. Venegas confirmed that "*[t]he engineering analysis...was sufficient enough to provide a basis for the emergency*." The 10/10/13 email from Ms. Venegas attached the

**SECOND AMENDED COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS**

Emergency Permit, which was then signed by the Receiver, and forwarded with the signature to Ms. Venegas who acknowledged receipt.

-- On 10/28/13 Ms. Venegas and Mr. Miller were notified in an email that the work on the Yang/Yazdani Property was completed per Emergency Permit, and that the As-Built plans [reflecting the SWPCP as installed, a common and accepted engineering practice] were being prepared. That email was acknowledged by Mr. Miller with a "Thank you".

-- On 11/7/13 an email was generated to Ms. Venegas and Mr. Miller and attached the "*as-built plans for the Yang property SWPCP under the Emergency Permit*". The As-Built Plans specifically reflected the installation of a "plywood covered with visqueen & sandbags to promote positive drainage to pool".

-- On 11/12/13 Mr. Miller responded to the email attaching those As-Built plans with "Thanks..."

76.  The above-said documentation, including permits, authorizations, communications, and the As-Built plans, was part of the County Yang/Yazdani Property file as of 2013 when it was generated, and the County DPW knew of the 2013 SWPCP installation and had authorized it.

77.  Shortly after said SWPCP installation, on November 19, 2013, Plaintiff resigned as Remediation Supervisor on the Yang/Yazdani Property (as did Ms. Roit).

78.  In 2016 – 3 years after Plaintiff resigned as Remediation Supervisor, Mr. Yang, still refusing to fund measures necessary to cure the NOV, and in violation of Court Orders, unilaterally removed the 2013 SWPCP installation. Additional Court proceedings followed, and another Order was issued on October 20, 2016, pursuant to which the Yangs were to reinstall the SWPCP under the

SECOND AMENDED COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS

supervision of and certification by their own engineer to assure compliance with County Code. The Yangs failed to have their engineer so certify the 2016 installation.

79. In any event, the 2016 reinstallation was <u>not</u> under the supervision of Plaintiff as she and her co-supervisor and her engineer had resigned 3 years earlier, and the County Defendants knew this.

80. Starting May 2017, i.e., following the filing of this lawsuit and additional First Amendment protected activities by Plaintiff, the County Defendants in general, and Defendant Khayat in particular, began generating correspondence, including to third parties, falsely stating that there were no permits or authorizations or As-Built plans in the Yang/Yazdani Property file for the SWPCP, and that Plaintiff, in her role as Remediation Supervisor, performed illegal and dangerous work on the Yang/Yazdani Property. On information and belief, Defendant Dockery was also the County inspector involved in these claims.

81. Even after the County Defendants in general, and Defendant Khayat in particular, were provided anew with the above-described documents reflecting permits and authorizations for the 2013 installation, as well as documentation that the current installation the County DPW was referencing was performed in 2016 – 3 years after Plaintiff resigned as Remediation Supervisor, said Defendants continued to claim, in the Yang/Yazdani Property file and in correspondence with third parties that Plaintiff was responsible for the illegal and dangerous conditions on said Property.

82. Plaintiff further alleges on information and belief that the County Defendants in general, and Defendant Khayat and Does 1 through 3 in particular, removed the documentation from the Yang/Yazdani Property file reflecting that the work performed under Plaintiff's supervision was authorized and approved, so as to create a sham record that such approvals were never given, and so as to create issues for Plaintiff with the Yangs and with Superior Court that appointed

**SECOND AMENDED COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS**

Plaintiff as Remediation Supervisor in that case, all in retaliation for Plaintiff's exercise of her First Amendment rights and in violation of her civil rights.

83.  Notably, and in further support of Plaintiff's allegations herein of discrimination, disparate treatment, and violation of her civil rights, the County Defendants in general, and Defendant Khayat in particular, refused and continue to refuse to address, investigate or cite the Yangs for extraordinary violations on that property which either pre-existed Plaintiff's role as Remediation Supervisor or which were installed after she had resigned.

**H.  ADDITIONAL ALLEGATIONS PERTINENT TO EACH CAUSE OF ACTION**

84.  Plaintiff further alleges on information and belief that the above-said improper conduct was pursuant to County policy and/or custom under which County officers and policymakers directed that planning regulations be implemented in a retaliatory and disparate fashion as against Plaintiff, based on Plaintiff's protected activities, under which County officers and policymakers ratified said disparate treatment of Plaintiff.

85.  To the extent necessary or required, which is disputed, Plaintiff filed a timely claim against the County for allegations herein, which claim was denied.

**FIRST CAUSE OF ACTION**

**VIOLATION OF 42 U.S.C. § 1983 ET SEQ.**

**(FIRST AMENDMENT)**

**AGAINST ALL DEFENDANTS**

86.  Plaintiff hereby re-alleges each and every allegation contained in Paragraphs 1 through 85 as though fully set forth herein.

87.  Defendants, and each of them, violated Plaintiff's First Amendment rights of free speech and free association by the actions alleged hereinabove, all in retaliation for her participation in protected activities, including to publicly redress and criticize the County and to access the courts, including the filing of Prior Litigation and the instant litigation.

28

88.  Plaintiff alleges on information and belief that Defendants, and each of them, acting under color of law, with the actions and omissions, including without limitation, the retaliatory actions described above, engaged in campaigns of harassment, and subjected and/or caused Plaintiff to be subjected to deprivation of her civil rights and privileges, including equal protection under the law, and freedom from government harassment and interference with her property rights, all in violation of, but without limitation, 42 U.S.C § 1983.  This Court has jurisdiction over a civil action for damages alleging a violation of the United States Constitution.  (28 U.S.C. § 1343) Such conduct was intended to and was reasonably likely to deter Plaintiff from engaging in speech protected under the First Amendment, and was intended to chill the exercise of free speech.

89.  Plaintiff further alleges on information and belief that Defendants, and each of them, in violating Plaintiff's rights with conduct as alleged hereinabove, acted in conspiracy with each other for the purpose of depriving Plaintiff, either directly or indirectly, of her civil rights, and denying her equal protection under the law, all in violation of, but without limitation, 42 U.S.C. § 1985, including without limitation, and on information and belief, discussions among themselves of ways to discriminate and retaliate against Plaintiff for her complaints, for filing the instant lawsuit, and based on her sexual orientation, thus injuring her and her property and/or depriving Plaintiff of her rights and/or privileges as a citizen of the United States.

90.  Plaintiff further alleges on information and belief that Defendant Bruckner was the supervisor of Defendant Huntington, and had knowledge of the wrongs conspired to be done and/or about to be committed, as alleged hereinabove, and having power to prevent or aid in preventing the commission of the same, neglected and/or refused to do so.  Further, having had actual or constructive knowledge of the wrongful conduct alleged herein, said supervisory Defendant's actions were so inadequate that they showed deliberate indifference

**SECOND AMENDED COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS**

1    to or tacit authorization of the alleged offensive practices, and had Defendant

2    Bruckner acted as opposed to failed to act, Defendant Huntington would not have

3    conducted himself in this retaliatory manner, all in violation of 42 U.S.C. § 1986.

4        91.  Plaintiff further alleges on information and belief that Defendants,

5    DOES 1 through 5, inclusive, were the supervisor(s) of Defendants Khayat and/or

6    Dockery, and had knowledge of the wrongs conspired to be done and/or about to

7    be committed, as alleged hereinabove, and having power to prevent or aid in

8    preventing the commission of the same, neglected and/or refused to do so.

9    Further, having had actual or constructive knowledge of the wrongful conduct

10   alleged herein, said supervisory Defendant(s)' actions were so inadequate that

11   they showed deliberate indifference to or tacit authorization of the alleged

12   offensive practices, and had said supervisory Defendant(s) acted as opposed to

13   failed to act, Defendants Khayat and/or Dockery would not have conducted

14   himself/themselves in this retaliatory manner, all in violation of 42 U.S.C. § 1986.

15       92.  As a direct and proximate result of the Defendants' wrongful conduct,

16   as alleged herein, Plaintiff suffered damages, according to proof.

17       93.  The aforementioned actions of the individual Defendants, and each of

18   them, were despicable, and carried on with wilful and conscious disregard for

19   Plaintiff's rights when Defendants were fully aware of the possible harmful

20   consequences of such conduct.  Defendants further wilfully and deliberately failed

21   to avoid these consequences, subjecting Plaintiff to an unjust hardship in

22   conscious and wilful disregard of her rights, so as to justify an award of

23   exemplary and punitive damages.

24   ///

25   ///

26   ///

27

28

30

**SECOND CAUSE OF ACTION**

**VIOLATION OF 42 U.S.C. § 1983 *ET SEQ.***

**(FOURTEENTH AMENDMENT)**

**AGAINST ALL DEFENDANTS**

94.  Plaintiff hereby re-alleges each and every allegation contained in Paragraphs 1 through 89 as though fully set forth herein.

95.  Defendants, and each of them, violated Plaintiff's Fourteenth Amendment right to equal protection and procedural due process guaranteed by the Fourteenth Amendment by, without limitation, the actions as alleged hereinabove, and by treating Plaintiff differently from similarly situated property owners, and having decisions regarding Plaintiff's Property made by biased and unfair decision-makers motivated to retaliate against her as well as by illegitimate animus and ill will, thus depriving her of the right to have land use determinations made by fair and impartial decision-makers.

96.  Plaintiff alleges on information and belief that Defendants, and each of them, acting under color of law, with the actions and omissions, including without limitation, the retaliatory actions described above, subjected and/or caused Plaintiff to be subjected to deprivation of her civil rights and privileges, including equal protection under the law and due process, and freedom from government harassment and interference with her property rights, all in violation of, but without limitation, 42 U.S.C § 1983, and this Court has jurisdiction over a civil action for damages alleging a violation of the United States Constitution.  28 U.S.C. § 1343.

97.  Plaintiff further alleges on information and belief that Defendants, and each of them, in violating Plaintiff's rights with conduct as alleged hereinabove, acted in conspiracy with each other for the purpose of depriving Plaintiff, either directly or indirectly, of her civil rights, and denying her equal protection under the law, all in violation of, but without limitation, 42 U.S.C. § 1985, including without

31

1   limitation, and on information and belief, discussions among themselves of ways

2   to discriminate and retaliate against Plaintiff for her complaints, for filing the

3   instant lawsuit, and based on her sexual orientation, thus injuring her and her

4   property and/or depriving Plaintiff of her rights and/or privileges as a citizen of the

5   United States.

6       98.  Plaintiff further alleges on information and belief that Defendant

7   Bruckner was the supervisor of Defendant Huntington, and had knowledge of the

8   wrongs conspired to be done and/or about to be committed, as alleged

9   hereinabove, and having power to prevent or aid in preventing the commission of

10  the same, neglected and/or refused to do so.  Further, having had actual or

11  constructive knowledge of the wrongful conduct alleged herein, said supervisory

12  Defendant's actions were so inadequate that they showed deliberate indifference

13  to or tacit authorization of the alleged offensive practices, and had Defendant

14  Bruckner acted as opposed to failed to act, Defendant Huntington would not have

15  conducted himself in this retaliatory manner, all in violation of 42 U.S.C. § 1986.

16      99.  Plaintiff further alleges on information and belief that Defendants,

17  DOES 1 through 5, inclusive, were the supervisor(s) of Defendants Khayat and/or

18  Dockery, and had knowledge of the wrongs conspired to be done and/or about to

19  be committed, as alleged hereinabove, and having power to prevent or aid in

20  preventing the commission of the same, neglected and/or refused to do so.

21  Further, having had actual or constructive knowledge of the wrongful conduct

22  alleged herein, said supervisory Defendant(s)' actions were so inadequate that

23  they showed deliberate indifference to or tacit authorization of the alleged

24  offensive practices, and had said supervisory Defendant(s) acted as opposed to

25  failed to act, Defendants Khayat and/or Dockery would not have conducted

26  himself/themselves in this retaliatory manner, all in violation of 42 U.S.C. § 1986.

27      100.  As a direct and proximate result of the Defendants' wrongful conduct,

28  as alleged herein, Plaintiff suffered damages, according to proof.

**SECOND AMENDED COMPLAINT
FOR VIOLATION OF FEDERAL CIVIL
RIGHTS (42 U.S.C. § 1983) AND
PENDENT STATE LAW CLAIMS**

101.  The aforementioned actions of the individual Defendants, and each of them, were despicable, and carried on with wilful and conscious disregard for Plaintiff's rights when Defendants were fully aware of the possible harmful consequences of such conduct.  Defendants further wilfully and deliberately failed to avoid these consequences, subjecting Plaintiff to an unjust hardship in conscious and wilful disregard of her rights, so as to justify an award of exemplary and punitive damages.

**THIRD CAUSE OF ACTION**

**REGULATORY TAKING IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS, THROUGH 42 U.S.C. § 1983 AGAINST THE COUNTY DEFENDANTS AND DOES 3 THROUGH 8**

102.  Plaintiff hereby re-alleges each and every allegation contained in Paragraphs 1 through 85 as though fully set forth herein.

103.  The County's actions were "under color of State law" within the meaning of 42 U.S.C. § 1983, and this Court has jurisdiction over a civil action for damages alleging a violation of the United States Constitution.  28 U.S.C. § 1343.

104.  The *California Coastal Act* requires local governments with jurisdiction over "coastal zone" lands to adopt a Local Coastal Program (LCP) that has been certified by the CCC.  *Pub. Res. Code* § 30500 The LUP is a general policy document that sets forth policies for coastal development and has the force of law.  The LIP is the collection of implementing ordinances that carry out LUP policies.  Both the LUP and LIP – together, the Local Coastal Program – must be consistent with the *Coastal Act*, as well as with the California and United States Constitutions.

105.  LUP and LIP policies must satisfy the constitutional requirement that the permitting authority make an individualized determination that permit conditions bear an "essential nexus" and "rough proportionality" to the alleged impacts of the specific project before it.  *U.S. Const. Amend*. V (Takings Clause);

33

*Amend. XIV* (incorporating Takings Clause as against state and local governments); see also *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825 (1987) (unconstitutional taking occurs in violation of the Fifth Amendment to the U.S. Constitution if government cannot establish an "essential nexus") and *Dolan v. City of Tigard*, 512 U.S. 374 (1994) (establishing procedural rule that the burden is on the permitting authority to make the individualized determination that a "nexus" and "rough proportionality" exist), together known as the *Nollan/Dolan* doctrine.

106.  The County's policy is to require Plaintiff to bear the burden and expense, including nonrefundable payments to the County, of establishing <u>lack</u> of "essential nexus" and <u>lack</u> of "rough proportionality" between the H1 designation and a project's alleged impacts, and to bear the burden and expense, including said nonrefundable payments to the County, to make the individualized determination of the <u>lack</u> of "nexus" and <u>lack</u> of "rough proportionality" even in circumstances such as the instant one, where the County admits that it has no basis or justification for the H1 designation.  This policy violates the *Nollan/Dolan* doctrine, as, without limitation, it categorically dispenses with the constitutional requirement that the government must make an individualized determination of "nexus" and "rough proportionality" rather than place the burden on the property owner to prove the lack of these elements.

107.  In adopting the above-said policy, the County took legislative action in violation of the law and/or in excess of its authority.

108.  Plaintiff further alleges that the H1 zoning designation does not substantially advance any legitimate state interest, the areas in question can only be viewed from Plaintiff's Property or the two adjoining properties, does not serve any appropriate government purpose, constitutes an invalid regulation of land use and, as Justice Scalia stated in *Nollan, supra,* 483 U.S. at 837, "an out-and-out plan of extortion."

34

109.  The H1 designation constitutes a taking in violation of the Fifth and Fourteenth Amendments.

110.  The Coastal Bluff designations which, in this instance, include private land that does not fit the definitions of "Coastal Bluff" or "bluff edge", do not substantially advance any legitimate state interest, have no basis in fact or reality, do not serve any appropriate government purpose, are intentionally made to prevent development on private property and to force property owners like Plaintiff to go through the CDP process (profitable for the County coffers requiring $10,000 with each application at the outset with no guarantee of approval), and also constitutes an invalid regulation of land use and "an out-and-out plan of extortion."

111.  This policy of designating "Coastal Bluff" where no coastal bluff exists definitionally under the *Coastal Act*, where the land is not visible from the coast or public areas, as well as making the Coastal Bluff designations, and the policy of requiring private property owners to pay $10,000 to the County for a permitting process as well as incur tens of thousands of dollars in professional and other fees in such circumstances, likewise violates the *Nollan/Dolan* doctrine.

112.  In adopting the above-said policy, the County took legislative action in violation of the law and/or in excess of its authority.

113.  The Coastal Bluff designations also constitute a taking in violation of the Fifth and Fourteenth Amendments.

114.  The County's expressed intent with the H1 designation is to permanently prevent development even though it is located on a private parcel.

115.  Under this cause of action, Plaintiff is entitled to and hereby seeks prospective injunctive and/or declaratory relief, and seeks such relief in declaring the zoning designations unconstitutional and void *ab initio*, and enjoining Defendant County from imposing said zoning designations generally and on Plaintiff's Property in particular.

35

**SECOND AMENDED COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS**

**FOURTH CAUSE OF ACTION**

**VIOLATION OF DUE PROCESS; FIFTH AND**

**FOURTEENTH AMENDMENTS, THROUGH 42 U.S.C. § 1983**

**AGAINST THE COUNTY DEFENDANTS AND DOES 1 THROUGH 5**

116.  Plaintiff hereby re-alleges each and every allegation contained in Paragraphs 1 through 115 as though fully set forth herein.

117.  The Supreme Court has recognized that "a regulation that fails to serve any legitimate governmental objective may be so arbitrary or irrational that it runs afoul of the Due Process Clause." *Lingle v. Chevron U.S.A Inc.*, 544 U.S. 528, 542 (2005)

118.  The Fourteenth Amendment provides that no State "shall deprive any person of life, liberty, or property, without due process of law."

119.  The County's decisions addressed hereinabove are arbitrary and irrational.

120.  Under this cause of action, Plaintiff is entitled to and hereby seeks prospective injunctive and/or declaratory relief, and seeks such relief in declaring the zoning designations unconstitutional and void *ab initio*, and enjoining Defendant County from imposing said zoning designations generally and on Plaintiff's Property in particular.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF THE CALIFORNIA CONSTITUTION, ARTICLE 1 §§ 1 AND 7**

**AGAINST ALL DEFENDANTS**

121.  Plaintiff hereby re-alleges each and every allegation contained in Paragraphs 1 through 115 as though fully set forth herein.

122.  Article I § 1 of the California Constitution provides:

*All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.*

36

123.   Plaintiff alleges on information and belief that the actions and omissions of Defendants, and each of them, violated the enactments of the *California Constitution*, Article I, § 1, by, without limitation, under color of law, interfering with Plaintiff's Property and protection of her property, intentionally causing damage to her property, and interfering with Plaintiff's pursuit and obtainment of safety, happiness, and privacy.

124.   Article I § 7 of the California Constitution provides in pertinent part:

*(a)  A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws.*

125.   Plaintiff further alleges on information and belief that Defendants', and each of their actions as alleged hereinabove, under color of law, subjected and/or caused Plaintiff to be subjected to deprivation of her civil rights and privileges in violation of said sections of Article I of the California Constitution, including equal protection under the law, violation of First Amendment rights, violation of due process rights, and discrimination against Plaintiff based on her sexual orientation.

126.   Under this cause of action, Plaintiff is entitled to and hereby seeks prospective injunctive and/or declaratory relief, and seeks such relief in declaring the zoning designations unconstitutional and void *ab initio*, and enjoining Defendant County from imposing said zoning designations generally and on Plaintiff's Property in particular.

127.   As a direct and proximate result of the Defendants' wrongful conduct, as alleged herein, Plaintiff suffered damages, according to proof.

128.   The aforementioned actions of the individual Defendants, and each of them, were despicable, and carried on with wilful and conscious disregard for Plaintiff's rights when Defendants were fully aware of the possible harmful consequences of such conduct.  Defendants further wilfully and deliberately failed to avoid these consequences, subjecting Plaintiff to an unjust hardship in

37

conscious and wilful disregard of her rights, so as to justify an award of exemplary and punitive damages.

## SIXTH CAUSE OF ACTION

### VIOLATION OF FIRST AMENDMENT AND DEPRIVATION OF EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION BASED ON SEXUAL ORIENTATION AGAINST ALL DEFENDANTS

129.  Plaintiff hereby re-alleges each and every allegation contained in Paragraphs 1 through 115 as though fully set forth herein.

130.  The First Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, guarantees freedom of speech and freedom from governmental retaliation for the exercise of that right, including in the redress and criticism of government.

131. The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1.

132.  Under the Equal Protection Clause of the Fourteenth Amendment, discrimination based on sexual orientation is presumptively unconstitutional and subject to heightened scrutiny.

133.  Plaintiff is an openly gay woman, a fact of which Defendants, and each of them, have been aware for years, and Plaintiff's sexual orientation was part of the Prior Litigation and became an issue when the County argued to deny Plaintiff attorney's fees for representation by her spouse.  The Ninth Circuit rejected the County's arguments.

134.  Plaintiff was hopeful that, following the Judgment in the Prior Litigation and fee award, the County and the officials interacting with Plaintiff regarding her home would move forward in a productive and non-discriminatory

fashion.  Unfortunately, not only did this not come to pass, but, on information and belief, one or more of the individuals responsible for the Judgment in the Prior Litigation were almost immediately promoted.

135.  Plaintiff alleges on information and belief that, as a result of the County RPD and DPW policies condoning civil rights violations in general and against Plaintiff in particular, Defendants, and each of them, have again violated Plaintiff's civil rights with disparate and punitive treatment based on her sexual orientation and exercise of her First Amendment rights of freedom of speech and redress of government.

136.  Plaintiff further alleges on information and belief that Defendants, and each of them, in violating Plaintiff's rights with conduct as alleged hereinabove, acted in conspiracy with each other for the purpose of depriving Plaintiff, either directly or indirectly, of her civil rights, and denying her equal protection under the law, all in violation of, but without limitation, 42 U.S.C. § 1985, including without limitation, and on information and belief, discussions among themselves of ways to discriminate and retaliate against Plaintiff for her complaints, for filing the instant lawsuit, and based on her sexual orientation, thus injuring her and her property and/or depriving Plaintiff of her rights and/or privileges as a citizen of the United States.

137.  Under this cause of action, Plaintiff is entitled to injunctive and/or declaratory relief, and seeks such relief herein.

138.  As a direct and proximate result of this discrimination, Plaintiff suffered damages, according to proof.

139.  Plaintiff further alleges on information and belief that Defendant Bruckner was the supervisor of Defendant Huntington, and had knowledge of the wrongs conspired to be done and/or about to be committed, as alleged hereinabove, and having power to prevent or aid in preventing the commission of the same, neglected and/or refused to do so.  Further, having had actual or

**SECOND AMENDED COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS**

constructive knowledge of the wrongful conduct alleged herein, said supervisory Defendant's actions were so inadequate that they showed deliberate indifference to or tacit authorization of the alleged offensive practices, and had Defendant Bruckner acted as opposed to failed to act, Defendant Huntington would not have conducted himself in this retaliatory manner, all in violation of 42 U.S.C. § 1986.

140.  Plaintiff further alleges on information and belief that Defendants, DOES 1 through 5, inclusive, were the supervisor(s) of Defendants Khayat and/or Dockery, and had knowledge of the wrongs conspired to be done and/or about to be committed, as alleged hereinabove, and having power to prevent or aid in preventing the commission of the same, neglected and/or refused to do so. Further, having had actual or constructive knowledge of the wrongful conduct alleged herein, said supervisory Defendant(s)' actions were so inadequate that they showed deliberate indifference to or tacit authorization of the alleged offensive practices, and had said supervisory Defendant(s) acted as opposed to failed to act, Defendants Khayat and/or Dockery would not have conducted himself/themselves in this retaliatory manner, all in violation of 42 U.S.C. § 1986.

141.  As a direct and proximate result of the Defendants' wrongful conduct, as alleged herein, Plaintiff suffered damages, according to proof.

142.  The aforementioned actions of the individual Defendants, and each of them, were despicable, and carried on with wilful and conscious disregard for Plaintiff's rights when Defendants were fully aware of the possible harmful consequences of such conduct.  Defendants further wilfully and deliberately failed to avoid these consequences, subjecting Plaintiff to an unjust hardship in conscious and wilful disregard of her rights, so as to justify an award of exemplary and punitive damages.

///

///

///

SECOND AMENDED COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment from this Court as follows:

**ON THE FIRST CAUSE OF ACTION FOR VIOLATION OF 42 U.S.C. §1983 ET SEQ (FIRST AMENDMENT VIOLATIONS)**

      1.  For compensatory damages according to proof;

      2.  For punitive damages against the individual defendants, according to proof;

      3.  An award to Plaintiff of reasonable attorneys' fees and expert fees under, without limitation, 42 U.S.C. § 1988, including, without limitation, attorney's fees for County actions as a direct consequence of Plaintiff filing and prosecuting this litigation, including, without limitation, County's removal of unconstitutional conditions its personnel attempted to impose on Plaintiff prior to issuing permits for the Remedial Project, making Plaintiff a "prevailing party" as to those matters notwithstanding the current mootness of those disputes and with said mootness resulting from the filing and prosecution of this action.

**ON THE SECOND CAUSE OF ACTION FOR VIOLATION OF 42 U.S. §1983 ET SEQ. (FOURTEENTH AMENDMENT VIOLATIONS)**

      4.  For compensatory damages according to proof;

      5.  For punitive damages against the individual defendants, according to proof;

      6.  An award to Plaintiff of reasonable attorneys' fees and expert fees under, without limitation, 42 U.S.C. § 1988, including, without limitation, attorney's fees for County actions as a direct consequence of Plaintiff filing and prosecuting this litigation, including, without limitation, County's removal of unconstitutional conditions its personnel attempted to impose on Plaintiff prior to issuing permits for the Remedial Project, making Plaintiff a "prevailing party" as to those matters notwithstanding the current mootness of those disputes and with said mootness resulting from the filing and prosecution of this action.

**SECOND AMENDED COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS**

**ON THE THIRD CAUSE OF ACTION FOR REGULATORY TAKING IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS, THROUGH 42 U.S.C. § 1983**

7.  For prospective injunctive and/or declaratory relief, declaring the zoning designations unconstitutional and void *ab initio*, and enjoining Defendant County from imposing said zoning designations in general and on Plaintiff's Property in particular.

8.  An award to Plaintiff of reasonable attorneys' fees and expert fees under, without limitation, 42 U.S.C. § 1988, including, without limitation, attorney's fees for County actions as a direct consequence of Plaintiff filing and prosecuting this litigation, including, without limitation, County's removal of unconstitutional conditions its personnel attempted to impose on Plaintiff prior to issuing permits for the Remedial Project, making Plaintiff a "prevailing party" as to those matters notwithstanding the current mootness of those disputes and with said mootness resulting from the filing and prosecution of this action.

**ON THE FOURTH CAUSE OF ACTION FOR VIOLATION OF DUE PROCESS; FIFTH AND FOURTEENTH AMENDMENTS, THROUGH 42 U.S.C. § 1983**

9.  For injunctive and/or declaratory relief, declaring the zoning designations void *ab initio*, and enjoining Defendant County from imposing said zoning designations in general and on Plaintiff's Property in particular.

10.  An award to Plaintiff of reasonable attorneys' fees and expert fees under, without limitation, 42 U.S.C. § 1988, including, without limitation, attorney's fees for County actions as a direct consequence of Plaintiff filing and prosecuting this litigation, including, without limitation, County's removal of unconstitutional conditions its personnel attempted to impose on Plaintiff prior to issuing permits for the Remedial Project, making Plaintiff a "prevailing party" as to those matters notwithstanding the current mootness of those disputes and with said mootness resulting from the filing and prosecution of this action.

SECOND AMENDED COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983) AND PENDENT STATE LAW CLAIMS

**ON THE FIFTH CAUSE OF ACTION VIOLATION OF THE CALIFORNIA CONSTITUTION, ARTICLE 1 §§ 1 AND 7**

11.  For prospective injunctive and/or declaratory relief, declaring the zoning designations unconstitutional and void *ab initio*, and enjoining Defendant County from imposing said zoning designations in general, and on Plaintiff's property in particular;

12.  For compensatory damages according to proof;

13.  For punitive damages against individual defendants, according to proof;

**ON THE SIXTH CAUSE OF ACTION FOR VIOLATION OF FIRST AMENDMENT AND DEPRIVATION OF EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION BASED ON SEXUAL ORIENTATION**

14.  For prospective injunctive and/or declaratory relief, declaring the zoning designations unconstitutional and void *ab initio*, and enjoining Defendant County from imposing said zoning designations in general and on Plaintiff's Property in particular;

15.  For compensatory damages according to proof;

16.  For punitive damages, according to proof;

17.  An award to Plaintiff of reasonable attorneys' fees and expert fees under, without limitation, 42 U.S.C. § 1988, including, without limitation, attorney's fees for County actions as a direct consequence of Plaintiff filing and prosecuting this litigation, including, without limitation, County's removal of unconstitutional conditions its personnel attempted to impose on Plaintiff prior to issuing permits for the Remedial Project, making Plaintiff a "prevailing party" as to those matters notwithstanding the current mootness of those disputes and with said mootness resulting from the filing and prosecution of this action.

1   **ON EACH AND ALL CAUSES OF ACTION**

2        18.  An award to Plaintiff of costs of suit pursuant to *Federal Rules of Civil*

3   *Procedure, Rule* 54(d); and

4        19.  An award to Plaintiff of any other and further relief that the Court

5   deems just and proper under the circumstances of this case.

6

7   DATED: August 28, 2017                    Respectfully Submitted,

8                                             LAW OFFICES OF NATASHA ROIT

9                                             *Natasha Roit*

10                                            _____

11                                            BY: NATASHA ROIT
                                              Attorney for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SECOND AMENDED COMPLAINT
FOR VIOLATION OF FEDERAL CIVIL
RIGHTS (42 U.S.C. § 1983) AND
PENDENT STATE LAW CLAIMS**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18.  My business address is: 3929 MALIBU VISTA DRIVE, MALIBU, CALIFORNIA  90265

A true and correct copy of the foregoing document entitled (*specify*): **PLAINTIFF'S SECOND AMENDED COMPLAINT** will be served in the manner stated below:

1. **TO BE SERVED BY EMAIL**:  On August 28, 2017

**Deborah J. Fox dfox@meyersnave.com, David Mehretu dmehretu@meyersnave.com**

☐  Service information continued on attached page

2. **SERVED BY EMAIL AND PERSONAL DELIVERY**:  On August 28, 2017

Judge's Copy
via Personal Delivery: Honorable Andre Birotte, Jr., U.S. District Court, Central, 350 W. First Street, Los Angeles, California  90012

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 28, 2017 | NATASHA ROIT, ESQ. | *Natasha Roit* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**